CHANCERY.                    **Deboe vs Lowen.**

*Case* 153.              ERROR TO THE JESSAMINE CIRCUIT.

*Wills.   Estates in fee, conditional.   Estates in fee, ab-
solute.   Vendor and vendee.*

*July 18.*      CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Provisions of the
will of Francis
Lowen.

THIS case grows out of the will of Francis Lowen, admitted to record in 1820. And the principal question is, whether under the devises presently to be stated, the devisees took estates for life, or fees defeasible on contingency, or whether by the terms of the devises, or by force of the statute converting estates tail into estates in fee simple, they took the absolute fee in the land devised. It appears from the will, that the testator had had fifteen children, who are all named therein; and after devising to his wife his home plantation and other property for life, to be disposed of at her death as afterwards directed, he states that five daughters had received their full portions of his estate, completes the portion of his son John by a devise to his two children, devises 200 acres of land to his son Francis, in full of his share, and 100 acres of land and two slaves to his son Benjamin, as the amount intended for him; and then directs that after the death of his wife, his land not before disposed of, shall be equally divided by his executors "between the following children, to-wit: Susan, (the younger,) William, Polly, Lewis, Morton, Agnes and James."—that the division shall be made sooner if any of his first six named children want their part after marrying or attaining the age of twenty one; that his son James have his part when he wants it, "if he dies without heirs it is my will that it goes to my children who are single now, and to Benjamin, my son; should he die with heirs, I will the land to said heir or heirs of my son James" "It is also my will that if any of my children die without lawful heir or heirs, that the property hereby willed, go to my surviving

children, I mean Susan, (the younger,) William, Polly, Lewis, Benjamin, Morton and Agnes." He then directs his negroes, not before disposed of, to be equally divided among the following children as they attain the age of twenty one, to-wit: Susan, William, Polly, Lewis, Morton and Agnes. And as to James, who is omitted in this clause, he says: "I will him none of my negroes," and in lieu thereof, directs that the surplus of certain personal property over what may be retained by his wife under the will, be sold and the proceeds be placed in the hands of D. A., to deal out to James as may be right, and adds, "if it is never right to give it to him, it must go to the children who live with me now."

In 1821 or 1822, the land referred to in these residuary devises, except that devised to the wife for life, was divided among the seven residuary devisees; and in the year 1837, shortly after the death of the wife, the land devised to her was divided between the survivors of the seven and the children of one who was dead, and Benjamin Lowen, to whom a portion was allotted in the part of Morton, who had died without children. James and Lewis conveyed to William their interest in the land which had been devised to the testator's wife for life, and William sold and conveyed, by deed with general warranty, his entire interest, including his own portion as well as that derived from James and Lewis, to Deboe. And a judgment having been afterwards obtained upon Deboe's note for the last instalment of the purchase money, this bill was filed by him to enjoin that judgment and to rescind the sale and conveyance on the ground of, 1st. A defect of title in the vendor. 2d. Of his insolvency; and, 3d. Of his fraudulent misrepresentations as to title.

*The object of the bill in this case.*

The vendor denies the alledged defectiveness of his title, relies also upon conveyances from his surviving brothers and sisters supposed to be interested, obtained since their interest was suggested by the complainant. He also denies all fraud, misrepresentation or deception with regard to the title, and denying his insolvency as alledged, insists that the complainant having accepted

*Answer.*

a conveyance with warranty, must look to his warranty for indemnity, and has no ground for relief in equity.

William Lowen is childless and as yet unmarried, James is married and has several children, as is probably the case with the other surviving residuary devisees and the son Benjamin, Agnes (Daniel,) is dead, leaving infant children.

With regard to the alledged insolvency and fraud of William Lowen, we infer that although he is worth several thousand dollars, he has little visible estate. But we are not satisfied that there was any fraud on his part in the sale. If, however, his title is to terminate with his life, it is not to be doubted that the purchaser, and probably both parties labored under a serious mistake, with regard to the subject of the sale; and as the recourse of the purchaser upon his warranty, is not entirely safe, he should be relieved either by a rescission of the contract or by ample indemnity, unless the vendor has acquired, since the sale, what both parties supposed he had at the time, and what enured to the benefit of the vendee, will give him the expected fruits of his purchase.

We shall first enquire what estate William Lowen took under the direct devise to him in his father's will, which is to the seven younger children by name, William being one, and if any of them (except James, as to whom there is a separate provision,) should die without lawful heir or heirs, the property willed to them to go to the survivors of the six and Benjamin, who was not one of the six. The word heir or heirs here used, means of course, heirs of the body of the deceased child. And the contingency is, if any of the six should die without heir or heirs of his or her body, the property shall go to the survivors and Benjamin. Whether the portion devised to Benjamin is included in the devise over, is not now in question, As the devise over to the surviving children upon the death of one without heirs of his body, refers evidently to the contingency as one to happen during the life of some of them, we think it sufficiently apparent that whatever construction might be put upon the words "if any die without heirs of his

A devise to seven children by name and if any of them should die without lawful heir or heirs, the property to go to the survivors of the six and B. who is not one of the six—Held that the words heir or heirs mean heir or heirs of the body of the deceased child, and in case of the death of one without child or children, the survivors take the land.

body," standing wholly unexplained, there is enough here to restrict the contingency to the death of the first taker. And as the first devise to the seven is sufficient to give to each a fee simple, though there are no words of inheritance, and the devise over is on the contingency of any one dying without issue living at his death, we are of opinion that according to the case of *Pells* vs *Brown*, (*Cro. James*, 590,) each one took a fee defeasible, on that contingency and not otherwise. Whence it follows, that the devise over being on a contingency which must happen, if at all, within a life or lives in being, is good by the same authority.

This conclusion is directly sustained by the case of *Hart* vs *Thompson's heirs*, (3 *B. Monroe*, 486,) upon a devise of land "to be equally divided among testator's nine children, then living, or their lawful heirs if dead, and if either of his nine children should die without heirs of their body, lawfully begotten, that their part so allotted and given them as aforesaid, be equally divided amongst his other children then living." All the other cases in this Court upon wills, both of real and personal estate, made since estates tail were abolished by the Virginia act of 1776, embodied in the 10th section of our act regulating conveyances of 1796, (1 *Stat. Law*, 442,) show that where words importing a death without issue are used as describing the contingency on which the devise over is to take effect, any word or circumstance in the will indicating an intention to restrict the failure of issue to the time of the death of the person referred to has been allowed, in accordance with the natural and grammatical meaning of the words themselves, to restrict the contingency to that period. And in no case of a will made since the abolition of entails has the Court, so far as we have discovered, inferred an intention to create an estate tail, or construed the devise as creating one contrary to the intention, because those words were used: *Moore's trustees* vs *Howes' heirs*, (4 *Monroe*, 199;) *Corbin's adm'r.* vs *Moseby*, (3 *A. K. Marshall*, 289;) *Brashear's heirs* vs *Macy*, (3 *J. J. Marsh.* 89;) *Brown's heirs* vs *Brown's adm'r.* (1 *Dana*, 39;) *Richardson, &c.* vs *Birney*, (5

*Dana*, 425;) *Hart* vs *Thompson's heirs*, (3 *B. Monroe*, 486;) and *Attorney General* vs *Wallace's heirs*, (7 *B. Monroe*, 611.) In these cases many others are referred to in which the Courts, both in England and the United States, following the rule that the intention should prevail, have given effect to any word or circumstance in the will, which sufficiently indicates the intention to confine the failure of issue to the death of the first taker, and thus to restrict the contingency within the period allowed by law for a valid limitation founded upon it. To these others might be added, tending to establish the same principle; while there are many others which do not admit so easy an explanation or restriction of the expression "dying without issue," but seem to give to it an almost inflexible meaning or effect of referring to an indefinite failure of issue, and thus indicating an estate tail in the first taker. Under this diversity of opinion among other Courts, we are content to adhere to the rule of construction and the exposition of words adopted by this Court, as the safest evidence of the law in this State, and the surest guide to the intention of testators devising under that law.

Here then is a devise to the testator's children, A. B. C., &c., and if any of them die without issue, the property to go to the testator's surviving children. Which can mean nothing more nor less, according to the literal interpretation of the word surviving, than his children *then living*, as expressed in *Hart* vs *Thompson;* and must receive the same construction with the same effect of indicating with sufficient certainty, that the testator intended to provide only for the case of one or more of his children dying without issue living at the death of such child, by giving to his own surviving children the estate which had been devised to such decedent. If the devise over to the surviving children, upon the death of one without issue, might be construed to ambrace the descendants of one who had previously died, this could only be done on the assumed ground that the testator could not have intended to exclude them, and that he would have provided for them expressly if that case had occurred to his mind. But

A devise to A. B. and C., children of the testator, and if any of them die without issue the property to go to the surviving children, means only that in case of the death of any one of the devisees without issue, that the children of the testator *then living*, are to take under the will.

such a construction beyond the words of the will, to meet the presumed intention of the testator in a case not provided for, is surely inadmissible if the effect must be to defeat not only the presumed intent in the omitted case, but the expressed intention also in the case already provided for. It is more rational to adhere to the words of the will, and effectuate the express devise to the surviving children, though to the exclusion of the descendants of one who may have died, than under color of construing the devise so as to embrace these descendants, to give to it such a construction against the plain import of the words as will place the estate absolutely in the first taker, and destroy the whole devise in remainder. If however, the devise over might be construed as if it had been "to the surviving children and the descendants of such as may be dead," we should still be of opinion, that upon the whole clause, it was apparent that the testator was contemplating and providing for the case of one child dying without issue, while others of his children were still living, and that he should therefore be understood as intending a dying without issue living at the death of the child referred to. Then in any view of the case, William Lowen had a defeasible fee, terminable on the contingency of his having no issue at his death. And each of the other children named in the residuary devise (excluding James,) had a similar interest. The title of William, therefore, as held under the direct devise to himself, is not such as a purchaser should be compelled to take, or to hold and pay for under the circumstances above stated. Then the question is, whether he has supplied the defect by conveyances from those who might be entitled on his death without issue? On the face of the will there are Susan, Polly, Lewis, Morton, Benjamin and Agnes, of whom Morton is dead without issue, and Agnes is dead, leaving children. From the other four, deeds were exhibited, conveying to William their interest in the land conveyed by him to Deboe, which includes the share of Lewis, separately conveyed by him to William.

And we are of opinion that this deed of Lewis bars his own issue, who could not claim his share as purcha-

If a defeasible fee be given to the father, his conveyance will be 'effectual to pass the claim of his heirs.

sers under the will, but by descent from him, in whom the fee simple is vested by the will, defeasible only on the contingency of his dying without issue. The devise to him, as to William, and the others being in fee simple, is not restricted by any implication arising from the reference to his issue or heirs, in describing the contingency on which the devise over is limited; clearly no such implication is necessary to carry the estate to his issue, if he should leave any at his death, and the devise over being limited to take effect at his death or never afterwards, there is no implication of an intention to confine the inheritance to his issue, as long as there might be any, or to exclude collaterals, except at his own death, leaving issue, when the law itself would exclude them, and the estate would descend free from all condition and restriction.

The children of one who has died, and whose interest in a devise was contingent, to take effect upon the death of a co-devisee, cannot take any thing upon the death of another co-devisee dying after their ancestor.

As these deeds are deemed sufficient to pass whatever interest the grantors might have in so much of the land conveyed by William Lowen to the complainant, [as consists of his own share and that of Lewis Lowen, and as his own conveyance is good against any issue which he may have, the only remaining enquiry on this branch of the subject is whether, as the testator's daughter Agnes, (Daniel,) being already dead, cannot take as a surviving child, on the future death of either of the others, her infant children have any interest in the devise to the surviving children. A majority of the Court is of opinion, (the Chief Justice doubting,) that they cannot be so entitled under any admissible construction of the will.

We proceed then to consider the devise to James, a portion of whose share of the land was conveyed by him to William, and is included in the sale and conveyance to Deboe. The devise to James being first made in the general residuary clause, which does not distinguish him from the other six children therein named, must be considered as giving to him as to the others, a fee simple, subject to such restriction as is afterwards imposed. The ground of the subsequent discrimination with regard to James, does not appear. The inference on the face of the will is, that he was either marred, or o

full age at the date of the will. He is to have his part when he wants it, and the will immediately proceeds to make the provision with regard to his part, that if he dies without heirs, (that is, issue,) his part goes to the testator's unmarried children and to Benjamin, and if he should die with heirs, (issue,) the testator wills it to said heirs. We are satisfied that in this case, as in the other, the contingency on which the devise over is limited, is the death of James without issue or heirs of his body, living at the time. This natural import of the words is not, it is true, sustained by the circumstance of the devise over being to the surviving children, and there can be no doubt that the descendants of a devisee in remainder under this clause, would be entitled upon the death of James without issue, after the death of their ancestor, the devisee. But when the testator makes one disposition in case James dies without heirs, and in the same sentence makes another disposition in case he dies with heirs, we think it too evident to admit of question that the contingency upon which each disposition depends, refers to the time of his death, and must be then determined. Whatever has been said of the phrase, "if he dies without heirs or issue," as being satisfied by a failure of his issue at any time after his death, we suppose the clause "if he dies with heirs, I will the land to said heir or heirs," admits of but one possible solution, and must necessarily be confined to the time of his death.

Then, the devise is to James, (which of itself gives a fee;) and if he dies without heirs, (meaning of his body,) to certain of his brothers and sisters; if he dies with heirs, (of his body,) to said heir or heirs (of his body.) If the last clause, "if he dies with heirs," &c., had been omitted, the case would have been like the other devise, a fee simple, defeasible on his death without issue. Taking in the last clause, the devise may be considered as being to James and his heirs (of his body,) if he has any at his death, if none, to his brothers and sisters, which is an estate tail; or to James, (and his heirs forever,) if he dies with heirs of his body, to them, and if he dies without heirs of his body, to his brothers and sisters.

A devise to James and his heirs (of his body,) if he has any at his death, if none, to his brothers and sisters, is an estate tail.

If the devise to the heirs (of his body,) does not restrict the devise to James, he has a fee simple, defeasible in favor of the remainderman on his death without issue, and his alienation is good against his issue, if he leaves any. If his estate is restricted to an estate tail by the devise to his heirs (of the body,) confining the descent to his issue, then he has by the statute, a fee simple absolute, and his alienation is good against the remainderman as well as against his issue.

We are of opinion that there is no sufficient indication of an intention to give him an estate for life only, which might easily have been manifested by using the words "for life," as in the devise to the testator's wife. It can scarcely be supposed that the testator regarded such a restriction as resulting from construction by a comparison of the different clauses. And although the placing of the proceeds of certain personal property in the hands of a trustee, to be dealt out to James at discretion, may be an evidence of some distrust in him, the inference deducible from this circumstance, is not stronger than that which arises from the failure to use the ordinary words of restriction in the devise to him, and cannot govern the construction of that devise. The testator might have distrusted his use of money in hand, and yet have had no apprehension with regard to the real estate.

Whether James had by the will an estate tail, or a fee defeasible on his death without issue, in either case his conveyance is good against his issue. And if the devisees in remainder be considered as having any interest on account of the possibility of his dying without issue, four of them have released it to William, who is himself a fifth, and if the children of Agnes, (Daniel,) have a similar contingent interest in the small tract conveyed by James to William, the interest is too minute, and the contingency on which it depends too improbable to give it any importance in the present case. We must add too, that we are inclined to consider the provision made for James Lowen and his issue, as creating an estate tail, which is by the statute, a fee simple

absolute. And upon the whole case, we think there is no ground for relief in regard to the title.

Wherefore, the decree is affirmed.

*J. & W. L. Harlan* for plaintiff; *Robertson and Spillman* for defendant.