CASE 20—ACTION BY MARY A. FOX AND OTHERS AGAINST
A. B. CORNETT TO QUIET TITLE TO LAND.—
May 1, 1906.

## Fox, &c., v. Cornett

Appeal from Harlan Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for defendant. Plaintiffs appeal. Affirmed.

1. Public Lands—Release and Quitclaim—Operation and Effect.
   —A release and quitclaim by a patentee of public lands to certain named grantees and all others holding older titles of all his interest acquired by a patent in 1853, in so far as it covers land patented, held, or claimed by the parties of the second part under title older than the patent, is of no avail to one who is not shown to have been in possession of any land covered by the patent and against whom is set up a patent issued in 1846 to the patentee who executed the release.

2. Same—Patents—Validity—Description of Land.—A patent of public lands, definite in its description of boundaries, is

not void because it fails to refer to and exclude older patents included in it; those portions being excluded by operation of law.

3. Quieting Title—Title to Sustain Action—Possession.—Where a claim to have title quieted is asserted by a defendant as a counterclaim, and there has been an effort on the part of the person against whom the claim is asserted to deprive the defendants of his title by converting it to his own use, Ky. Stat., 1903, section 11, authorizing suit to quiet title by an owner in possession, does not apply, so as to require proof of possession by the defendant.

FOX & JACKSON, CHAS. C. FOX, AND W. F. HALL for Appellants.

H. C. CLAY for Appellee.

(No briefs—record misplaced.)

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

This suit was brought by appellants, plaintiffs below, to quiet the title to an undivided one-third of 925 acres of land in Harlan county, to which they asserted title by virtue of a purchase from the heirs of Hezekiah Branson, who obtained a patent for this body of land in 1851, under a survey made in 1848. The deed conveying this interest was executed in 1889 and recorded in 1890. Appellee filed an answer and counter-claim, traversing the petition, and alleging in the counter-claim that he was the owner of and in the posession of 421 acres of the 925 acres described in the petition. The part that he asserted title to included the land conveyed to appellants by the Bransom heirs. "He prayed that the plaintiff's petition be dismissed, that his title to said land be quieted, that plaintiff's be required to release to defendants any and all claims they have to said land herein described, and for costs and all proper relief."

Appellee's title to the land in controversy rests on a patent issued by the commonwealth to Boyd Dickinson, in 1846, for 17,200 acres of land; the patent being based on a survey made in 1845. In a reply appellants averred that in September, 1853, Dickinson, the patentee, released and quit-claimed to Hezekiah Bransom and others all interest he had in the land to which they assert title or ownership. The grantees in this deed are Hezekiah Bransom and 25 other named persons, ''and all other citizens of Harlan county whose titles are older than Boyd Dickinson's patent, or who hold bona fide improvement rights under the laws of Kentucky, before the survey of Boyd Dickinson;'' and it further provides ''that the said Boyd Dickinson, for and in consideration of the sum of one dollar, to him in hand paid, the receipt whereof is hereby acknowledged, has bargained, sold, and by these presents doth bargain, sell, release, and forever quit-claim and confirm unto the party of the second part all the right, title, and interest which the said Boyd Dickinson acquired by a large survey of land made by him in the county of Harlan and State of Kentucky, on the waters of Cumberland river and tributaries, some years ago, and which he obtained on the 9th of October, 1853, and for which he obtained a patent from the commonwealth of Kentucky, so far as said patent and survey covers or conflicts with any land patented, held, or claimed by any and all of the party of the second part to this deed, which are older than the patent to this grantor.''

Appellee by rejoinder controverted the allegations in respect to this deed, and denied that any deed affecting the land in controversy had ever been made. Pending this action, the heirs of Hezekiah Bransom filed their petition to be made parties and asserted title to the other two-thirds of the 925 acres, asking

that the title thereto be quieted, but on their motion and before a submission of the case their petition was withdrawn. Proof was taken by the parties, and the court adjudged "that the defendant in the original action and plaintiff in the counter-claim, A. B. Cornett, is, and was at the institution of this action, the owner and in the actual possession of the land described in his answer and counter-claim, * * * and that the title to said land be forever quieted against the claims of plaintiffs, and the plaintiffs are ordered to release unto A. B. Cornett all claim that they or either of them had or have to said land, or any part of same."

It appears from the evidence in the case that appellants had never been in possession of the land claimed by them, and that the 421 acres adjudged by the court to appellee lies within the lines of the 17,200 acres for which a patent was issued to Dickinson in 1846. Appellants assail the validity of the patent to Dickinson, and also rely on the deed of release before mentioned. This deed of release, which appellee denies was ever made, and attacks the sufficiency of for reasons not here necessary to mention, does not aid appellant, because there is no evidence that Hezekiah Bransom at the time this deed was made was, or ever had been, in possession of any part of the land embraced in this patent. The deed also shows on its face that it relates to land for which Dickinson obtained a patent October 9, 1853, while the Dickinson patent, relied on in this case by appellee, was issued in 1846. The patent issued to Dickinson in 1846 for this 17,200 acres of land does not mention or exclude any prior patents for land embraced within its boundary, although the surveyor whose evidence was taken for appellee, and who files a map of the Dickinson patent as a part of his deposition, testifies that there

were several prior patents issued for land within the Dickinson boundary. For this reason appellants insist that the Dickinson patent is void; but in our opinion the failure of the Dickinson patent to mention or describe prior grants within the boundary does not render it void. The exterior lines of this patent are well described, and the surveyor testifies that he found no difficulty in locating them, and that the survey was unusually accurate to cover so large a boundary. The patent to Dickinson did not in and of itself affect the validity of prior patents within the boundary, and the appellee testified that he did not assert any claim to land within the boundary which is covered by patents of an older date.

In Hall v. Martin, 89 Ky. 9, 11 Ky. Law Rep. 241, 11 S. W. 953, the appellee claimed under a patent to McNew, the boundaries of which were definitely set forth by courses and distances, as are the boundaries of the Dickinson patent. The McNew patent excluded the land contained in prior grants, of which there were two. In that case, as in this, it was contended that the McNew patent was void because it failed to describe the excluded prior grants. The court in answer to this said: "There is no claim by the appellee of his right to recover any of the land held under the elder grants; but the controversy is with the junior patentees, and the question of fact arising between these conflicting claims we will not consider, as the case must go back for another trial. The exclusions or elder grants within the boundary of the McNew patent, under which the appellee claims, are not identified or mentioned in the patent to McNew—neither described by boundary nor by the name of the patentee or grantee. The McNew patent proceeds to define the specific boundaries of the patent, as much so as the courses and

distances in an ordinary deed, the number of acres as being 1,248, and excluding therefrom the number of acres contained in prior grants. * * * If in every patent that contains exclusions it is necessary to describe the grant excluded, or to so identify it, either as to the number of acres, the boundary, or by giving the name of the grantee or the patentee of the elder grant, then the patent to McNew in this case is void, as it is silent as to the boundary, the number of acres, or the owners of the excluded land. We perceive no reason why such a grant should be held void, or the party under such a patent denied the right of showing title in himself to all but the exclusions contained in the grant. * * * If Mc-New had made the survey as accurate, and as specific, or even much less so than his patent shows, without mentioning any elder grant as being within his boundary, it will not be pretended that his patent would be void. The law would then exclude from his patent that which was paramount in title, and that which he has in this case excluded by the terms of his grant.''

In the case at bar, although the patent does not mention prior grants, it is conceded that prior grants are contained within the boundary, and the law will exclude from the operation of the Dickerson patent the prior grants. There is some question as to whether or not appellee was in possession of the land in controversy, and it is insisted that, as his cause of action asserted in the counterclaim is for the pur-pose of quieting the title to the land, both the legal title and the possession are necessary under the pro-visions of section 11 of the Kentucky Statutes of 1903, and the decisions of this court involving this question. Cornelison v. Fouschee, 101 Ky., 257, 19 Ky. Law Rep., 417, 40 S. W., 680; Packard v. Beaver

Valley Land & Mining Co., 96 Ky., 249, 16 Ky. Law Rep., 451, 28 S. W., 779. But the principle laid down in these cases is not here applicable for two reasons: The appellant brought this suit to have the title to this land quieted, and the appellee by his counterclaim asserted ownership to this land and asked that his title to it be quieted, tendering an issue involving the question of superior title, and it was competent, as ruled in Magowan v. Branham, 95 Ky., 581, 16 Ky. Law Rep., 233, 26 S. W., 803, for the court to try and determine it; and for the further reason that this was an effort on the part of appellant to deprive appellee of his title to the property by converting same to his own use. It is a wrongful seizure of his title that is the foundation of his action, and, as held in Herr v. Martin, 90 Ky., 377, 12 Ky. Law Rep., 359, 14 S. W., 356, in a case like this, a party can maintain his action although not in the actual possession of the property.

Several minor defects are pointed out in the chain of title by which appellee holds this land, but we do not deem it necessary to discuss them. It is sufficient to say that in our opinion they do not affect the validity of appellees' title in this controversy with appellant.

The judgment is affirmed.