## Frasure, et al. v. Northern Coal & Coke Co., et al.

(Decided November 19, 1920.)

### Appeal from Floyd Circuit Court.

1. Quieting Title—Proceedings and Relief.—Where in suit to quiet title and enjoin trespass, plaintiff corporation, after sale of the land involved, was voluntarily dissolved by its stockholders, and a separate action had been filed by its vendee seeking the same relief against defendants and the two actions had been consolidated by agreement, the court did not err in overruling defendant's motion to abate because of the dissolution of the first plaintiff corporation.

2. Quieting Title—Champertous Sale.—A sale of land by a bona fide claimant during the pendency of an action to protect and quiet its title is not champertous as to defendant who claims superior title and adverse possession.

3. Quieting Title—Possession.—Under section 11, Kentucky Statutes, both title and possession are essential to maintain an action to quiet title, but where defendant asserts superior title and asks to have same quieted he elects to try title simply and waives the question of possession.

4. Quieting Title—Possession.—Where plaintiff had both title and possession when defendant procured deed for the land and attempted to obtain possession from plaintiff's tenants, his deed was champertous and his possession was that of plaintiff's tenants merely, who could not attorn without plaintiff's consent.

J. C. HOPKINS for appellants.

SMITH & COMBS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellee, Northern Coal & Coke Company, filed this action in 1909 against appellant, Robert Frasure, and his wife, Lizzie Frasure, to quiet its title to 287 acres of land conveyed to it in 1903 by Tipton Hall; to enjoin defendants from trespassing thereon and to cancel deeds to them alleged to be champertous for 82 acres of the 287 acre tract.

Defendants by answer and counterclaim traversed the material allegations of the petition, asserted title to the 82 acres under the deeds alleged to be champertous and asked that their title to same be quieted.

While that action was pending the plaintiff, Northern Coal and Coke Company, sold and conveyed the land to the Elk Horn Fuel Company, and defendant, Lizzie Frasure, died intestate. The Elk Horn Fuel Company then filed separate action against Robert Frasure and the heirs of Lizzie Frasure based upon substantially if not identically the same allegations and seeking the same relief as the Northern Coal and Coke Company in its action. The first action was abated as to Lizzie Frasure and the two actions were consolidated by consent order. Guardian *ad litem* was appointed for the infant heirs of Lizzie Frasure and a similar answer and counterclaim was filed for them and Robert Frasure in the consolidated cases as the one filed by Robert Frasure and his wife in the first action.

Before the taking of proof had been completed the Elk Horn Fuel Company sold and conveyed the land to the Elk Horn Coal Corporation, which filed its petition to be made party and this was done. Defendants filed another answer and counterclaim the same in substance as the two previously filed. The issues were completed by replies and rejoinders and proof was filed. Upon a trial a judgment was awarded plaintiffs and defendant's counterclaim was dismissed.

For reversal of that judgment it is first urged for defendants that the court erred in overruling their motion to abate the action of the Northern Coal and Coke Company upon a showing that it had been dissolved by the voluntary action of its stockholders after the sale of the land to the Elk Horn Fuel Company. This objection is obviously without merit, since even if we assume the Northern Coal and Coke Company after formal dissolution did not yet have the right and power in the settlement of its affairs to prosecute the suit to judgment for the benefit of its vendee, the vendee certainly had the right, after consolidation of the two actions by agreement, to prosecute same in its own behalf, unless as claimed the deed to the latter was champertous because of defendants' adverse possession of the land at that time. Even if defendant's possession was adverse to the Northern Coal and Coke Company, which it was not, when it conveyed the land to the Elk Horn Fuel Company, the deed still would not be champertous since a con-

veyance by a *bona fide* claimant during the tendency of an action to enforce its claim is not within the purview of the statute. Chiles v. Conley, 9 Dana 385.

It is next insisted plaintiffs did not prove possession when the first action was filed in 1909 or when the later one was filed in 1915, essential under section 11, Kentucky Statutes, to the maintenance of an action to quiet title.

Assuming this is an action as contended to quiet title and not one to prevent defendants from fraudulently seizing and appropriating plaintiffs' title (in which possession by plaintiff is not necessary, Herr v. Martin, 90 Ky. 377, and many like cases) defendants waived the question of possession when by answer and counterclaim they asserted superior title in themselves and sought to have same quieted. Fox v. Cornett, 124 Ky. 139, 92 S. W. 959; Hall v. Hall, 149 Ky. 817, 149 S. W. 1128; Sackett v. Jeffries, etc., 182 Ky. 696, 207 S. W. 454; Childers v. York, 187 Ky. 332.

On the merits plaintiffs claim title deducible from the Commonwealth under patent issued April 17, 1866, to Preston Hamilton for 1,462 acres of land and by adverse possession for the statutory period of fifteen years.

Defendants claim title under the same patent. These are the facts. The 82 acres involved are on the headwaters of Dry fork of Mud creek and are all of the land in the Hamilton patent on that branch. As is shown by oral testimony, Hamilton sold this portion of his patent to Granville Tackett, but if he made him a deed therefor it was not recorded and could not be found. However in 1878 Tackett sold and conveyed this land to Henry Holt by deed of record which recites immediately following the description ''and being the same land deeded from Preston Hamilton to Granvil Tackett.'' Whether this is sufficient proof of a deed from Hamilton to Tackett to connect plaintiff's title with the Commonwealth, to sustain which contention several cases from other jurisdictions are cited, we need not decide since plaintiff, Northern Coal and Coke Company, clearly established its claim of title by continuous adverse possession from 1878 to 1905 and that it was in possession thereunder when defendant procured deed to same from one Owen Hall and began to assert title and attempt to obtain possession thereunder.

Shortly after Henry Holt bought the 82 acres in controversy and procured deed for same from Granville Tackett in 1878, he built a house thereon and fenced 7 or 8 acres surrounding same which he occupied and cultivated until he sold, conveyed and delivered possession of same to Andrew Mitchell, who after fencing an additional 15 or 20 acres sold and conveyed same to Spencer Hall. Hall took possession of the Holt house and cleared fields and held same claiming the whole boundary of 82 acres until he sold out and delivered possession to Lib Howell, who sold to Wm. Hamilton, who sold to Harmon Hall, who sold to Tipton Hall in 1883. Howell, Wm. Hamilton and Harman Hall did not have deeds but they in succession lived in the Holt house and had possession of the cleared fields. After Tipton Hall bought out Harmon Hall and took possession he procured a deed from Spencer Hall for the entire 82 acres.

In 1893 Alex Hall, claiming the entire 82 acres under an old Frasure patent, sold and conveyed same to Sallie Hall, wife of Morgan Hall, after taking possession and inclosing a portion thereof outside Tipton Hall's inclosures. Sallie and Morgan Hall built what is known in the record as the Noah Hall house within the Alex Hall inclosure, moved into same and later sold and conveyed same to Wm. Hamilton, who sold and conveyed same to Tipton Hall, March 25, 1898. Tipton Hall thus regained undisputed possession and the title of every claimant of the entire boundary and retained same without interruption until he conveyed same to the Northern Coal and Coke Company in 1903. It is therefore apparent that the Northern Coal and Coke Company thereby acquired the possession and title of every one who ever had or claimed a right to possession of any part of the 82 acres. From 1903 to 1905 Tipton Hall retained possession under lease from the Northern Coal and Coke Company and had subtenants in both houses on the land when defendants procured a quit claim deed from Owen Hall for same.

During Tipton Hall's occupancy of the land, Preston Hamilton visited him frequently and never asserted any claim of ownership; but early in 1905, being then an old man and living about 100 miles from the land he executed to Dave Hall for $5.00 a deed without warranty to "all his right, title and claims on said Dry branch" under the 1,462 acre patent. Dave Hall immediately conveyed same by quit claim to Owen Hall, who in turn executed a similar conveyance to defendants for the recited

consideration of $86.50. While these deeds cover only the land in dispute .it is thoroughly established that neither Dave Hall nor Owen Hall was aware of that fact or ever claimed thereunder any right, title or interest in same.

Owen Hall testifies that he believed and represented to defendants that he was transferring only any interest he might have in the lands located farther down Dry fork which he had formerly owned, and defendants not only knew this but they were fully aware of Tipton Hall's adverse possession, title and claim of ownership. After defendants had thus acquired quit claim deed to the land they began to try to dispossess the Northern Coal and Coke Company and this they claim to have accomplished in the following manner: Tipton Hall had subtenants living in both houses, Kenas Jones in the Henry Holt house and Noah Hall in the other. Kenas Jones moved out and defendant, Robert Frasure, by some arrangement with him moved into the house, he was vacating, a few cooking utensils and other household goods. As soon as Tipton Hall learned of this fact, which he did the next day or soon thereafter, he got the key to the house which Kenas Jones still had, threw out defendant's plunder and put Fed Hall in the house. Defendant gathered up his plunder and placed it in a chicken coop. Fed Hall by direction of Tipton Hall or another agent of the Northern Coal and Coke Company tore the chicken coop down and defendant stored his plunder under a small rock cliff nearby. About the same time Noah Hall went to West Virginia to work, leaving his family in the Noah Hall house. While he was away from home, defendant got Hall's wife to lease the house from him. Defendant later built a shack on the uninclosed part of the land and spent a part of his time there cutting timber, etc., although he spent most of his time with his family at his home some three or four miles distant.

It was to enjoin these trespasses, cancel his deed from Owen Hall and quiet plaintiffs' title that these actions were instituted by plaintiffs.

A mere recitation of the facts, established almost without contradiction and practically admitted by the testimony of defendant, Robert Frasure, leaves little if any room for comment upon and none whatever for criticism of the judgment rendered by the chancellor.

The deed from Owen Hall to defendants was clearly champertous and void; and whatever possession they

ever had of the land was obtained by attempted attornment of plaintiffs' tenants or by forcible entry, and much of this was after the issuance and in violation of the temporary injunction granted plaintiffs when the suit was filed.

One of the important functions of courts, especially of equity jurisdiction, is to frustrate the efforts of one so minded, thus fraudulently or forcibly to seize and appropriate either the title or possession of another.

Wherefore the judgment is affirmed.