## Cary-Glendon Coal Co., Inc., v. Warren et al.

December 20, 1946.

Rehearing denied Jan. 28, 1947.

Patterson & Wilson for appellant.

C. K. Calvert and J. M. Gilbert for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The appellant seeks reversal of a judgment wherein the appellees were adjudged by the trial court to have established title by adverse possession to a disputed tract of land.

Reversal is urged upon two grounds, namely: (1) Because appellees' evidence of adverse possession, as a matter of law, is insufficient to maintain the burden imposed generally upon litigants seeking to establish title by such means, and (2) even if appellees' evidence of adverse possession were sufficient to establish title as against a stranger, it is wholly insufficient to establish title against a cotenant.

The appellant, claiming an undivided ½ interest in the land, alleged that the appellees are the owners of the other ½; that the tract cannot be divided without materially impairing its value, and asked that it be sold.

By answer appellees denied these allegations and claimed title in themselves by adverse possession. By· amended answer, cross-petition, and counterclaim, appellees plead a source of record title; reiterated their plea of adverse possession and prayed that their title to the entire tract be quieted.

Upon submission of the cause, the court adjudged the defendants to have been in the actual adverse possession of the boundary of land described in their answer, cross-petition, and counterclaim for a period exceeding 15 years next before the institution of the suit and quieted the title in them.

It appears that in 1889, Elijah Gregory and his wife conveyed to James D. Black and John Brackett a ½ undivided interest each in the disputed property. The ½ undivided interest of John Brackett, through a chain of title, finally rested in the appellant. James D. Black conveyed his ½ undivided interest to J. F. Warren on July 17, 1917. On February 13, 1922, J. F. Warren and wife conveyed this land to Willis Warren and wife, who fenced it and have lived on it since that time. This last conveyance will be the subject of more discussion a bit later.

The appellees insist that under their deed from J.

F. Warren and wife, they received the tract in its entirety; that the recording of the deed in itself was notice to the appellant that the Warrens were claiming the land in its entirety. They insist that where there is a cotenancy, and one of the cotenants conveys in severalty to a stranger, who records his deed, and enters on the estate treating it as his own, there is an ouster of the cotenancy; and if the third party stays in possession under his purchase for the statutory period, he has acquired the entire estate by limitation. In support of that contention a number of cases are cited, among which are Gill v. Fauntleroy's Heirs, 47 Ky. 177, 8 B. Mon. 177; May v. Chesapeake & O. R. Co., 184 Ky. 493, 212 S. W. 131, 142.

In the Gill case above, the court states the rule as follows:

"The doctrine is, that the denial by one tenant in common, of the title of his cotenant, claiming the whole, himself, and a refusal to pay him his share of the profits, constitutes an ouster, and renders the possession adverse. Such was the doctrine laid down by Lord Mansfield in Doe ex dem. Fisher and wife &c v. Prosser. (Cowper 217) Such also was held to be the law in Jackson ex dem. Bradt &c v. Whitlock, (6 Cowan's Rep. 633)."

In the May case, the rule is thus stated: "Although a mere adverse holding of lands by one co-owner, which does not come to the actual knowledge of the outstanding tenant, or is not of such notorious nature as to put a reasonably prudent person upon inquiry, is not sufficient ordinarily to set the statute of limitation running against a cotenant, yet such holding, coupled with an absolute deed to the claimant for the whole property in severalty, recorded in the proper office, will set the statutes in motion."

The appellant takes the position that the deed from J. F. Warren and wife to his brother, Willis Warren, and wife, appellees here, was not such a deed as was contemplated under the rule above. In order properly to bring the matter before us, it becomes necessary to look at the pertinent parts of the deed. In the granting clause, it is stated: " * * * the receipt of which is hereby acknowledged, do hereby sell, grant and convey to the

party of the second part, their heirs and assigns, the following described property, viz: A certain tract of land lying and being in Bell County, Kentucky, and being the same tract of land conveyed to the party of the first part by James D. Black & wife by deed bearing date 17th day of July, 1917, which is duly recorded in Deed Book No. 82, at page 309, County Court Clerk's office." Then follows the description of the land.

In the habendum clause, we find: "To have and to hold the same unto the said parties of the second part, their heirs and assigns, the aforesaid interest in said land, free from the claim of the parties of the first part and all persons claiming or who may claim under them, and with covenant of Special Warranty."

It will be noted, in the first above, the source of title is given, and it is stated that it is the same tract conveyed by James D. Black and wife to the appellees' grantor. The deed from James D. Black and wife specifically states it conveys an undivided ½ interest in the property. That is all J. F. Warren had to convey to his brother, Willis Warren, and wife. Had the appellant searched the record and noted in the deed from James F. Warren and wife that the land conveyed was the same land as deeded by James D. Black and wife to James F. Warren, and further noted in the habendum clause the statements "the aforesaid interest" and "with covenant of Special Warranty," it could not necessarily have concluded that Willis Warren was claiming the land in entirety.

Thus, we conclude that the deed itself is not sufficient to throw the matter in line with the rules as set out in the cases cited by appellees.

The next question, then, that confronts us is the matter of whether or not the adverse possession, as set up, claimed, and proven by the appellees, is of such degree and character as would operate effectively against a co-owner.

The appellees fenced the land; they resided on the land; they cleared some timber from it, and they cultivated some of the land. But are these effectual acts of adverse possession against the co-owner?

In Volume 1, Am. Jur., Adverse Possession, Section

50, it is stated: "Every co-tenant has the right to enter into and occupy the common property and every part thereof, provided, in so doing, he does not exclude his fellow tenants or otherwise deny to them some right to which they are entitled as co-tenants; and they, on their part, may safely assume, until something occurs of which they must take notice, and which indicates the contrary, that the possession taken and held by him is held as a co-tenant and is, in law, the possession of all the co-tenants, and not adverse to any of them."

Again, in Section 54, page 824, it is stated: "Accordingly, it is a general rule that the entry of a cotenant on the common property, even if he takes the rents, cultivates the land, or cuts the wood and timber without accounting or paying for any share of it, will not ordinarily be considered as adverse to his cotenants and an ouster of them. Rather, such acts will be construed in support of the common title. Mere exclusive possession, accompanied by no act that can amount to an ouster of the other cotenant, or give notice to him that such possession is adverse, will not be held to amount to a disseisin of such cotenant. Mere intention, unannounced, is not sufficient to support a claim of adverse title."

These text statements are in harmony with the rules enunciated by this court.

Even in the May case, cited and relied upon by the appellees, this court said: "It is a rule of long standing that one tenant in common holding under a common title is estopped to deny the title of his cotenant, and the statute of limitation does not begin to run against such cotenant until actual notice is brought to him by the occupying tenant, either by express declaration or by such acts or conduct as would preclude any other idea than absolute ownership on the part of the occupying tenant, and that the occupant intended to hold and claim the land as separate estate adversely to all the world, including his cotenant. When this comes to pass, the statute of limitation always begins to run, and the duty is upon the outstanding cotenant to assert his right within the statutory period, or forever after hold his peace. But no presumption of adverse possession arises from one cotenant merely holding and using land in the ordinary and usual way. On the contrary, such holding and use

is presumed to be amicable and for the joint use of all cotenants, and this is true, even where the life tenant in possession is also a cotenant.''

In Fordson Coal Co. v. Vanover et al., 291 Ky. 447, 164 S. W. 2d 966, 967, this court said: ''Since the possession of appellant in the circumstances shown in this case was also the possession of appellees, no right of action existed until their possession was denied or knowledge of the adverse character of the possession by their co-tenant was brought home to them.''

In Flanery v. Greene, 289 Ky. 244, 158 S. W. 2d 413, 415, the court thus stated the rule: ''So it may, but as stated in Wilcox v. Sams, supra (213 Ky. 696, 281 S. W. 832), 'the possession of one joint owner is presumptively the possession of all, and that to oust his cotenants his possession must not only be of the adverse character required by law as against strangers, but such as to bring home to his cotenants notice that he is holding and claiming adversely to them.' ''

In Whitaker et al. v. Langdon et al., 302 Ky. 666, 195 S. W. 2d 285, 288, this court said: ''A joint owner has the right to enter upon the common property and occupy and use it, but his presence upon the premises is not sufficient to put the other joint owner on notice that he is claiming the whole estate adversely to his joint owner. * * * Where one joint tenant is in possession of the land owned in common with another joint tenant, he can not assert title to the whole by adverse possession until he has brought home to the other joint tenant by clear and convincing evidence notice of his intention to set up title in himself as against the other joint tenant and has so asserted title for the statutory period.''

In discussing the question of adverse possession in a very well prepared brief in another cause before this court, the writer of the brief for the appellees herein most ably set out all the elements of adverse possession. In that brief there appears this very significant expression: ''It must have disposition, and that disposition must be mean tempered, like the hind end of a mule, and hostile to the point of expulsion and exclusion.'' In adverse possession against a co-owner there must be something more than an intention and claim. That intention

852

and claim must be brought to the knowledge and attention of the person against whom it is sought to be exercised, and as stated above, it must be hostile to the point of expulsion and exclusion.

In the instant case, the appellant had 8 or 10 thousand acres of land. It was interested primarily in the coal rights and paid little or no attention to the surface right. In the event of co-ownership, it appears to have been the practice of appellant to allow the co-owner to do what he pleased with the surface. The mere fencing of the land; the occupancy of it, or the clearing of timber from it, was not of the hostile character required to exercise adverse possession against a co-owner. Nowhere is there evidence that the appellees hostilely brought actual knowledge to the appellant of his adverse possession.

We conclude, therefore, that the appellant should have been adjudged a ½ undivided interest in the disputed land.

The judgment is reversed, for the entry of judgment below not inconsistent herewith.