## Sallee et al. v. Warner et al.

March 12, 1948.

K. S. Alcorn, Judge.

C. E. Rankin and Stuart Alexander for appellants.

Draffen & Dean for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 19, 1941, S. H. Gardner, whose wife was dead, and who resided at Cornishville, Mercer County, Kentucky, deeded to his daughter, Mary Will Warner, "and her bodily heirs" a tract of land in Mercer County containing 163 acres. After reciting the consideration (a monetary one) there is this language: "The

grantor does hereby sell and convey to the *grantee* the following described property, to-wit:'' (Our emphasis). The description then follows. Throughout the deed, until reaching the habendum clause the singular *vendee* is employed. The habendum clause is in this language: ''To have and to hold the said real estate with the improvements and appurtenances thereunto belonging unto the grantee and her bodily heirs, and assigns, forever, with covenant of general warranty.''

On August 19, 1947, appellee, and plaintiff below, Mary Will Warner, and her husband, Rieker Warner, conveyed 100 acres of the tract so conveyed to her by her father to Lilburn Sallee, and his wife, Anna May Sallee, for the consideration of $3,500, $500 of which was paid when the deed was delivered, and six promissory notes for $500 each were executed at the time payable in one, two, three, four, five and six years thereafter.

After that deed was executed the Sallees desired to borrow money and secure the lender by a lien upon the land so purchased by them. The proposed lender would not agree to make the loan unless the title of the vendors was insured, which the title company applied to declined to do, on the ground that the deed to Mrs. Warner by her father gave her only a life estate with remainder to her children, or if not, then it gave a joint estate to Mrs. Warner and her children, which insistence was bottomed upon the conclusion that the words ''heirs of her body'' as employed in the Gardner deed was intended by him to refer to ''children.'' To settle the controversy Mrs. Warner and her husband filed this declaratory judgment action in the Mercer circuit court on January 15, 1948, against their vendees, the two Sallees, and their three infant children, Joyce, Jackie and Mary Jo Warner.

The petition set out the foregoing facts and there were filed as exhibits therewith the two deeds referred to, and prayed for an adjudication of the rights of the parties, including the liability of the Sallees on the notes they had executed to Mrs. Warner. Stuart Alexander was appointed guardian ad litem for the infant defendants, whilst C. E. Rankin represented the adult ones.

The attorneys for each class of defendants filed

answers urging and insisting upon the contention here-inbefore stated, that the deed by Gardner to his daughter conveyed to her only a life estate with remainder to the class embraced by the phrase "her bodily heirs," which they argue was intended to mean children and that her deed to the Sallees operated to convey only her life interest. The court sustained plaintiffs' demurrer to each answer and later adjudged that the deed to Mrs. Warner by her father, S. H. Gardner, conveyed to her the fee simple title to the land in controversy, and from that judgment defendants prosecute this appeal.

The answer of the adult defendants set out the fact that Mrs. Warner was the daughter of S. H. Gardner, which did not appear from the petition, the purpose for which was to show the relationship of the parties thereto, and from that conclusion it is contended that the grantor intended for the phrase "bodily heirs" to refer to and be his daughter's children. In other words, their effort was and is to show by extrinsic evidence that it was not the intention of Mrs. Warner's father to employ words entailing the title to the conveyed land, under the rule announced in the famous Shelley Case, a doctrine announced by the English courts, and which is universally referred to as "the rule in Shelley's Case." But that rule has long since been repealed and discarded by the American courts in most, if not in all, of which was done by statute. Our statute abolishing it is now KRS 381.070, which says: "All estates heretofore or hereafter created, which, in former times, would have been deemed estates entailed, shall henceforth be held to be estates in fee simple; and every limitation on such an estate shall be held valid, if it would be valid when limited upon an estate in fee simple."

It was enacted prior to the beginning of this century and as we now remember it was in 1796, and has been continuously enforced since the date of its enactment, with this modification: That if from a survey of the entire muniment of title, whether a deed or a will, the language of the maker from an overall survey of his entire language reveals an intent on his part to create only a life estate in the first taker with the remainder to his or her children, or an intent to convey the entire title jointly to the first taker and to his or her

children, then such an intent as so gathered will be enforced.

Appellants, it will be seen, rest their case on such modification. However, courts and text writers unanimously hold and state that the modification will not prevail against the express words of the section of our statute supra, unless the doubt concerning the grantor of the testator's intention as gathered from the entire conveying instrument is more than evenly balanced with the usual and well understood meaning of the words "heirs of the body," "bodily heirs" or similar phrases referred to in our statute.

In Notes and Annotations to KRS, page 1381, under the heading of "Instruments creating fee simple," the annotator says: 'Devise or conveyance to person and the heirs of his body,' or similar words, which would at common law have created an estate tail, was by our statute converted into a fee-simple estate."

Supporting that statement there are cited forty cases from this court beginning with Deboe v. Lowen, 8 B. Mon. 616, 47 Ky. 616 and ending with Simons v. Bowers, 258 Ky. 755, 81 S. W. 2d 604. Among them is the case of Jones v. Mason, 53 S. W. 5, 21 Ky. Law Rep. 842. In that case the father deeded to his daughter a tract of land, the latter having five children at the time. The granting clause was: "We do give, grant, and convey unto the said Mary E. Moore and her bodily heirs the following described tract or parcel of land." The habendum clause said: "To have and to hold the same to the said Mary E. Moore and her bodily heirs and assigns, to her and their use, forever." It was also said: "I will warrant and defend the same to the said Mary E. Moore and her heirs and assigns."

This court held in an action by her children contending that the deed conveyed to them a vested remainder, or a joint interest with their mother, that the deed was one creating an estate tail and conveyed under the section of our statute supra a fee simple title to the plaintiffs' mother. That case is a far stronger one upholding the contention of appellants than is the instant one, and it was between parties of the same relationship as is true in this case.

In the case of Simons v. Bowers, supra, the testator devised to his children portions of his land "to them and their bodily heirs." Lidy Simons, one of his daughters, was devised 30 acres which she later sold and after her death Samuel E. Simons, her son, and Joe Walter Simons, a grandson, filed an action in the Jefferson circuit court against the then owners of the 30-acre tract to recover it, on the ground that Lidy Simons obtained under her father's will only a life estate with remainder to her children. Plaintiffs therein contended that the words "to them and their bodily heirs" as contained in the will of Henry Price, the father of Lidy Simons, intended by the use of the phrase "bodily heirs" to mean and refer to the children of his daughter, Lidy Simons. We cited in that case a number of our opinions supporting that contention where the language employed, viewed from the instrument as a whole, shows that it was the intention of the testator or grantor to mean children of the first taker to be a word of purchase, notwithstanding the words actually employed, "bodily heirs," which our statute converts into a phrase of limitation. The lower court rejected that argument and we affirmed its judgment.

In our opinion therein we referred to and adversely disposed of every argument which counsel for appellant present in this case in their effort to show that the deed here under consideration is sufficiently ambiguous to classify the case within the group embraced by the modification of the mandatory terms of our statute. In other cases since the Simons case was rendered involving practically the same facts, we adhered to the same rule of interpretation. The questions here involved, i. e., the admissibility of extrinsic evidence to aid in the interpretation of written instruments, including wills and deeds, are exhaustively considered in an annotation appearing in 94 A. L. R. beginning on page 26 and extending to page 293. On page 31 near the beginning of the annotation, under the heading of "General Rule against varying or adding to terms of will" the annotator says: "The general principle is well settled that extrinsic evidence is not admissible to vary, contradict, or add to the terms of a will, or to show a different intention on the part of the testator from that disclosed by the language of the will."

In support of that statement cases are cited from practically every appellate court in the union, including the Supreme Court of the United States, the citation of Kentucky cases occupying two-thirds of a column. The rule denying the admissibility of extrinsic evidence to vary the terms of a writing is tersely stated and frequently applied by this court, that "the question in each case is not 'What did the testator mean to intend to say'?, but 'What is meant by what he said'?'". That statement of the rule is also made and approved in the cases of Fowler v. Mercer's Ex'r, 1916, 170 Ky. 353, 185 S. W. 1117; Weedon v. Power, 1924, 202 Ky. 542, 260 S. W. 385; Walton v. Jones, 1926, 216 Ky. 289, 287 S. W. 710; Futrell v. Futrell's Ex'r, 1928, 224 Ky. 814, 7 S. W. 2d 232; Wright v. Singleton, 190 Ky. 657, 228 S. W. 38; Dunn v. Haley's Trustee, 302 Ky. 323, 194 S. W. 2d 635; and Kurrie v. Kentucky Trust Company of Louisville, 302 Ky. 592, 194 S. W. 2d 638. There appears to be no escape from the conclusion that the learned trial judge properly held that the title obtained by Mrs. Warner under the conveyance from her father vested her with an absolute fee simple title and that the two Sallees should comply with their contract and pay their notes as they matured.

Wherefore, the judgment is affirmed.