**EAST KENTUCKY ENERGY CORPORATION, Appellant,**

v.

**Wilford NIECE; Niece Mining Corporation, a Kentucky Corporation; Apple Tree Mining Co.; Lewis King and Ethel King, his wife; Stumbo Davis; Arnold Davis; Reece Davis; Locie Blair; Pauline McConnell; Reedith Gibson and Paul Gibson, her husband; and Bernice Hall, Individually and as Guardian for Hassell King, Appellees.**

No. 87–CA–2455–MR.

Court of Appeals of Kentucky.

June 23, 1989.

Case Ordered Published by Court of Appeals and Modified July 12, 1989.

John M. Stephens, Pikeville, for appellant.

Forrest E. Cook, Teresa Taylor, Whitesburg, Cordell H. Martin, Hindman, for appellees.

Before ELSWICK, HAYES and HOWARD, JJ.

HOWARD, Judge.

The appellant in this case appeals from a judgment of the Knott Circuit Court in which a deed that was the basis of the appellant's claim of ownership was construed to only convey a life estate with a contingent remainder and not a fee simple estate.

On January 1, 1897, James King executed a deed to his wife, Drucilla, concerning certain property in Knott County. That deed provides in pertinent part:

This deed of conveyance made and entered into this 1st day of January 1897 between James King of Knott County, Kentucky party of the first part and Drucilla King of the same county and state aforesaid of the second part.

Witnesseth, that said party of the first part for and in consideration of the sum of Five hundred dollars, cash in hand paid, the receipt whereof is hereby acknowledged, do hereby sell and convey to the party of the second part & her heirs and the following described property to wit:

. . . .

The conditions of this conveyance is such that at the death of said Drucilla King that the above lands is to descend to the heirs of her body belonging to the said Grantor James King, and that the said James King is to use and control the said land during his natural life.

To have and to hold the same together with all the appurtenances thereunto belonging unto the party of the second part her heirs and forever. And the said party of the first part hereby covenants with said party of the second part that he will warrant the title to the property hereby conveyed unto the said party of the second part and her heirs and forever.

In 1903, James and Drucilla executed a mineral deed to Duncan Coal & Iron Co. for a tract which was part of the property conveyed in the 1897 deed. In 1905, a similar mineral deed was executed regarding a second tract to the Northern Coal & Coke Company. These two deeds are the basis of the claim of title by the appellant, East Kentucky Energy Corporation.

James and Drucilla had seven children. James predeceased Drucilla and three of the children died before Drucilla passed away in 1936. The four remaining children or their representatives are appellees. These heirs of Drucilla made a coal lease to the appellees, Wilford Niece and Apple Tree Mining Company. Niece and Apple Tree Mining began to mine the area in question in the early 1980's.

On May 18, 1984, the Bethlehem Mines Corporation instituted the action at bar to enjoin Apple Tree from mining on the two tracts. The injunction was not granted, but the suit was allowed to proceed with the royalties from the mining being placed in escrow. Because Bethlehem's interest was apparently transferred to the appellant, the trial court granted a motion for substitution of parties on February 4, 1986.

A hearing on the question of title was held on December 16, 1986. Briefs were then submitted and on September 8, 1987, the trial court rendered its findings of fact and conclusions of law.

The trial court ruled that Drucilla was conveyed a life estate under the 1897 deed and that James retained a life estate. It also ruled that the bodily heirs of Drucilla, belonging to James, took a contingent remainder interest which vested at the time of Drucilla's death.

Because the appellees had allegedly satisfied the elements of a claim of adverse possession, with the possible exception of

completion of the 15–year period, the trial court further ruled that the transfer of the property from Bethlehem to the appellant was champertous. Consequently, the trial court voided that transfer. This appeal follows.

The appellant first contends that Drucilla King was granted fee simple title under the 1897 deed.

For support of its position, the appellant relies heavily on *Humphrey v. Potter*, Ky., 70 S.W. 1062 (1902). In that case, the deed in question provided in the granting clause as follows: "to have and to hold to said second part, his heirs and assigns, forever." A later clause in the deed provided "and after the death of said second part the land hereby conveyed shall go to the children of M.T. Potter by his first wife, and to no one else." The court stated that the grantee was first given fee simple title and the subsequent clause was an attempt to reduce the fee to a life estate. The court, citing other cases, held that when the words of the granting clause indicate the conveyance of a fee simple with no limitation, a later clause may not reduce that estate.

In *Combs v. Hounshell*, Ky., 347 S.W.2d 550 (1961), the Court stated that a deed is to be construed so as to give effect to the intention of the parties as it can be gathered from the language as a whole. Thus, "[t]he old rule that the estate conveyed by the granting clause could not be diminished by a later provision in the deed is no longer followed." *Id.* at 552. While *Humphrey, supra,* was not expressly overruled in *Combs, supra,* the rule relied upon by the appellant is no longer in use.

The appellant also questions whether the subsequent clause in the King deed actually creates a life estate. For example, the appellant argues that the phrase "on Drucilla's death the lands are to descend to the heirs of her body belonging to ... James" are words of limitation, i.e. showing what estate is conveyed, not words of purchase. Thus, it is argued that this phrase shows the intention that the heirs take by inheritance.

Also, the appellant points out that the deed clearly created a life estate in James. Thus, if the parties wished to create a life estate in · Drucilla, the appellant asserts that they obviously knew how to do so.

■ A life estate is a freehold interest in land where the term continues during the life of the owner or some other person. *English v. Carter*, 300 Ky. 580, 189 S.W.2d 839 (1948). The most obvious way to create a life estate would be to state "to A for his lifetime." *See Combs, supra,* or "for and during her life," *Clark v. McGrann*, 274 Ky. 1, 117 S.W. 1021 (1938). Further, as previously stated, the parties agree that the conveyance to James King "during his natural life" created a life estate.

■ But under the definition of a life estate, it appears to us that life estate arises whenever the deed as a whole expresses the intent of the grantor that the term of the estate conveyed would be measured by the lives of one or more persons. Moynihan, *Law of Real Property*, Chap. 2 § 10. Thus, when A, owner in fee simple, conveys "to B until he dies" or "to B and at his death to B's children" a life estate for B is created. *Id.*

■ Because the deed states that at the death of Drucilla the property would "descend" to certain heirs, we conclude that the estate conveyed to Drucilla was to continue for her life. KRS 381.090 provides that "if any estate shall be given by deed or will to any person for his life, and after his death to his heirs, or the heirs of his body, or his issue or descendants, the same shall be construed to be an estate for life only in such person, and a remainder in fee simple in his heirs or the heirs of his body, or his issue or descendants." Therefore, Drucilla received a life estate and remainder interests existed in the heirs of her body belonging to James. *See Eggner v. Hovecamp*, Ky., 119 S.W. 818 (1909).

The cases cited by the appellant to support its position are distinguishable.

In *Sallee v. Warner*, 306 Ky. 846, 209 S.W.2d 491 (1948), the deed referred to a singular grantee except in the habendum clause which stated "the grantee and her

bodily heirs, and assigns, forever." The Court held that a fee tail was created which by KRS 381.070 was converted to a fee simple and no ambiguity in the deed existed that would indicate the grantor intended otherwise. A similar result was reached in *Combs v. Slone*, 306 Ky. 419, 208 S.W.2d 304 (1948), where the deed stated to "N.V. Slone and Merdie Sloane, his wife, and the heirs of Merdie Sloane belonging to N.V. Sloane."

Neither of these cases involved deeds with clauses creating a life estate in the grantee. No such clause appears in the deed at issue in *McGinnis v. Hood*, 289 Ky. 669, 159 S.W.2d 1018 (1942), which is also relied upon by the appellant.

In *Kentland Coal & Coke Company v. Blankenship*, Ky., 300 S.W.2d 570 (1957), a deed stated in the opening paragraph that the grantee was "Nancy J. Blankenship and her heirs after her death." But in the granting and habendum clause, the grantee was "Nancy J. Blankenship and her heirs and assigns." The Court held that "heirs" in the opening paragraph were words of limitation and did not designate who was to take and fee simple title was conveyed.

*Blankenship, supra,* differs from the instant case. There was no clause in the body of the *Blankenship* deed which designated that the grantee's estate would end at her death. Moreover, the deed to Drucilla, unlike the Blankenship deed, specifically stated who was to take on her death, i.e. "the heirs of her body belonging to ... James."

The appellant also relies upon *Howard v. Gross*, 287 Ky. 415, 153 S.W.2d 989 (1941). The deed at issue in the opening paragraph and the habendum clause purport to convey a fee simple to the two grantees, but an intervening clause granted a life estate to one of the grantees and stated that "after his death the title is vested in his heirs." The Court stated that if the intervening clause was given effect, one of the grantee's ½ undivided interest would be reduced from a fee to a life estate and the other's interest would be completely extinguished. Given this ambiguous and contradictory language, the Court refused to enforce the clause granting a life estate and held the deed granted a fee to both grantees.

We do not think *Howard, supra,* is applicable to the instant case. Giving effect to the conditional clause in the King deed would not result in any absurd results such as completely taking away a grantee's interest in property.

■ Three of the seven children of James and Drucilla died without issue prior to Drucilla's death. The appellant contends that the children had vested remainders, that the interests of the three issue predeceasing Drucilla descended to her and that consequently, it received a $\frac{3}{7}$ interest in the mineral property. We agree.

In *Bentley v. Consolidation Coal Company,* 209 Ky. 63, 272 S.W. 48, 49 (1925), the Court stated as follows:

> The rule in this state is that where there is a devise over to the children of the life tenant, whether it be to them as a class, or whether they be named, they take a vested estate in remainder, but if the devise over is to 'heirs,' or the 'heirs of her body,' or 'legal heirs,' unless it may be ascertained from the instrument that those terms are used in the sense of children, the heirs take only a contingent remainder, which may be defeated by their death before the death of the life tenant.

This rule is derived from another rule which provides that a person's heirs cannot be known until his death. *See Crawford v. Hisle,* 214 Ky. 536, 283 S.W. 1019 (1926).

We believe that words in the conditional clause clearly refer to the children of James and Drucilla. We can think of no other takers who would fit the description of "heirs of Drucilla's body" belonging to James. Therefore, the remainder interests of the three children who predeceased Drucilla without issue were vested at their birth. As their heir at law, the interests of the three children passed to Drucilla. *See Phelps v. Sledd,* Ky., 479 S.W.2d 894 (1972). This $\frac{3}{7}$ interest in the mineral then passed to the predecessors of the appellant. Consequently, the appellant has a $\frac{3}{7}$ interest in the property in question.

The appellant next contends that the trial court erred in declaring the sale of the mineral property by Bethlehem Mines to the appellant void for champerty.

The basis of the trial court's ruling on this issue was KRS 372.070(1) which provides in pertinent part that "[a]ny sale or conveyance ... of any land ... of which any other person had adverse possession at the time of the sale or conveyance, is void." The trial court stated that the appellees had established the necessary elements for a claim of adverse possession.

 A conveyance of a fractional interest in a mineral estate creates a severance of the surface estate and the mineral. *Saulsberry v. Maddix,* 125 F.2d 430 (6th Cir.1942). Therefore, there was a severance of the surface estate and the mineral estate by the conveyance of the ⁹/₇ fractional interest to the appellant's predecessor in title. As a result, a tenancy in common in the mineral estate was created.

 The owner of the surface is regarded as a trustee in possession of the mineral estate for the use and benefit of its true owner. *Brockman v. Jones,* Ky.App., 610 S.W.2d 943 (1980), KRS 381.430. For the surface owners to adversely possess the mineral, he must continuously and uninterruptedly hold the coal mine or seam for the statutory period and if he should cease operating or removing coal, the statute stops running. *Id.*

There is no indication that prior to the operation by Apple Tree Mining in the early 1980's, there was a continuous and uninterrupted taking of the coal so that title might be acquired by adverse possession. The evidence showed at most, there had been some sporadic mine openings by the appellees.

 In addition, there must be something more than an intention and claim to constitute adverse possession against a cotenant. *Gary-Glendon Coal Co. v. Warren,* 303 Ky. 846, 198 S.W.2d 499 (1946). "That intention and claim must be brought to the knowledge and attention of the person against whom it is sought to be exercised and ... it must be hostile to the point of expulsion and exclusion." *Id.* 198 S.W.2d at 502. The appellees' actions were not of the type required for adverse possession against a cotenant.

If the claim of adverse possession is said to have begun with the mining by Apple Tree Mining, we still find no violation of the champerty statute.

 The conveyance of Bethlehem's interest to the appellant was after this action had been filed. The conveyance by a bona fide claimant during the pendency of an action to enforce its claim is not prohibited by the statute. *Frasure v. Northern Coal & Coke Co.,* 189 Ky. 574, 225 S.W. 479 (1920). The facts of the instant case precisely fit *Frasure, supra.*

Further, the purpose of KRS 372.070(1) is "to discourage litigation by prohibiting one who has a doubtful title, to clear which he is not willing to sue, from selling it to another person and thereby encouraging strife." *Strunk v. Perry,* 314 Ky. 658, 236 S.W.2d 912, 913 (1951). To void a transfer of one's interest in property after he had begun an action asserting that interest would not appear to us to further the purpose of the statute.

The judgment is affirmed in part and reversed in part.

All concur.