## East Jellico Coal Co. v. Jones, et al.

(Decided December 15, 1910.)

### Appeal from Knox Circuit Court.

1. Deeds—Validity—Absence of Words of Conveyance—Correcting Former Deed.—It is not necessary that a deed to land should contain words of conveyance. It is sufficient if it contains other words of equivalent meaning, and when the writing recites the making of a former deed, and then sets out that it is made to correct and make good the former deed, this is all that is required.

2. Same—Cardinal Rule of Construction.—It is a cardinal rule of construction to give some force if possible to every stipulation of a contract.

BLACK, GOLDEN & BLACK, for appellant.

JAMES M. HAYS, J. SMITH HAYS, HAZELRIGG & HAZELRIGG, for appellee

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Elijah Rhodes died a resident of Knox county about the year 1886, the owner of a large body of land. He left surviving him five children, who inherited the land at his death. Three of his children, Lucinda Fuson, William Rhodes and America Jones, on February 28, 1889, conveyed their interest in the land to William Bays. John Rhodes, one of the sons, was then living on a piece of land which he had gotten from his father. The other son, H. H. Rhodes, and Bays divided the other land between them, giving Bays three-fourths and H. H. Rhodes one-fourth, upon the ground that the land held by John Rhodes had been given him in full of his part of the estate. The division between H. H. Rhodes and William Bays was made on March 1, 1889, and a deed of partition was then executed between them. Bays moved on his part of the land, and held it until the year 1896, when he conveyed it to the East Jellico Coal Company. America Jones died in the year 1902, and this action in equity was brought by her two children, George W. Jones and Mollie S. Campbell on September 3, 1906, against the East Jellico Coal Company to have set apart to them the interest in the land which belonged to their mother, on the ground that the deed to Bays was void as she was a married woman in 1889, when she had made the deed, and her husband did not join with her in

it. The court adjudged them the relief sought, and the defendant appeals.

The defendant did not plead limitation, but pleaded as a confirmation of the deed made in 1889, and as a covenant barring the action, the following deed executed May 24, 1902:

"Whereas, on the 28th day of February, 1889, Lucinda Fuson, William Rhodes and America Jones, sold for a valuable consideration to William Bays, all their interest in the land descended to them as children and heirs at law of Elijah Rhodes, deceased, and did execute and deliver to said Bays their joint deed for their several interests therein, but the said Lucinda Fuson and America Jones failed to have their husbands to join them in said conveyance, and the said William Rhodes failed to have his wife join him in said conveyance. Now in order to correct and make good said conveyance they each together with their respective husbands and wife join in this deed except the husband of Lucinda Fuson, who is now dead, and in the deed of William Bays to H. H. Rhodes his wife's name does not appear in the body of said deed, which deed is dated March 1, 1889, and they now join in this deed to correct said mistake or oversight.

"Now, therefore, in order to correct all errors and imperfections in former deeds made by any of the parties of the first part herein to-wit: Lucinda Fuson, William Rhodes and his wife Melvina Rhodes, America Jones and her husband Benjamin Jones, John Rhodes and his wife Sarah Rhodes, H. H. Rhodes and his wife Mary F. Rhodes, being all the heirs of E. Rhodes, deceased, and William Bays and his wife, Elizabeth Bays parties of the first part and King Golden party of the second part,

"Witnesseth, that the parties of the first part for and in consideration of the several sums mentioned in former deeds and in consideration (as to some) of deeds to parties of the first part, have sold and by these presents grant and convey to the party of the second part his heirs and assigns forever all of our respective interests in and to the following described tract or boundary of land, lying and being in Knox county, Kentucky, on the waters of Coon Branch waters of Big Brush Creek and bounded as follows, to-wit:" (Here follows boundary of the land set apart to H. H. Rhodes in the division made between him and Bays.) "To have and to hold the same together with all the appurtenances thereunto be-

longing, unto the party of the second part his heirs and assigns forever. And the said party of the first part hereby covenants with the said party of the second part that they will warrant the title to said property hereby conveyed unto the said party of the second part and his heirs and assigns forever."

It will be observed that King Golden is the party of the second part in this deed, he being the vendee of H. H. Rhodes, and only the land that belonged to H. H. Rhodes is conveyed by the deed. The Bays land is not embraced in the deed but the deed was signed and acknowledged by Bays and his wife and by Mrs. Jones and her husband. It is, therefore, a written memorial signed by all the parties, and is a contract in writing between them. It recites that on February 28, 1889, Lucinda Fuson, William Rhodes and America Jones sold for a valuable consideration to William Bays all their interests in the land descended to them as children and heirs at law of Elijah Rhodes, deceased, and executed and delivered to Bays their joint deed for their several interests; but Lucinda Fuson and America Jones failed to have their husbands join them in the conveyance. After this recital are these words: "Now in order to correct and make good said conveyance, they each together with their respective husbands, and wife join in this deed except the husband of Lucinda Fuson, who is now dead." While the language used does not purport a conveyance of the Bays land by this instrument, it constitutes a statement in writing that they have sold and conveyed the land to Bays, and they stipulate that they join with their husbands in this deed in order to correct and make good the previous deed. Mrs. Jones could not demand from Bays the land that she had sold to him without returning the consideration which he paid her, and so this money which was then in her hands was a sufficient consideration to support the agreement contained in the writing in question. It is not necessary that a deed shall contain words of conveyance. It is sufficient if it contains other words of equivalent meaning, and when the writing recites the making of a former deed, and then sets out that it is made to correct and make good the former deed, this is all that is required. Bays is a party to this writing, and it was signed and acknowledged by him as well as by them. In Bealle v. Shoal, 1 A. K. M., 475, the suit was brought upon a writing which recited

the agreement merely; and it was held that this was equivalent to a covenant. The court said:

"Nor is it an availing objection that the agreement is contained only in the recital of the instrument; for the recital of an agreement in a deed will create a covenant upon which an action of covenant will lie, as well as if it had been contained in the body of the deed."

The same rule was followed in Bank of Kentucky v. Vance, 4 Litt. 168. where in a mortgage securing one debt it was recited that the property mortgaged was also bound to secure another debt. The court there said:

"But the recital of an agreement in a deed, is, in law, equivalent to an agreement made by the · deed; and hence it is said, that upon such recited agreement, an action of covenant will lie."

These cases were followed in Metcalfe v. Poindexter, 4 Met. 51, in which the court said:

"All written contracts are, in a certain sense. but re-statements of a pre-existing parol agreement between the parties. And the mere fact that the written memorial contains such a recital cannot operate so as to change the character and legal effect of the instrument as to reduce it from the grade and dignity of a covenant to a mere memorandum of the prior agreement."

In 1902, when this writing was made, Mrs. Jones, though a married woman, by section 2128, Kentucky Statutes, had power to make contracts as a single woman except, among other things, that she could not make any executory contract to sell or convey or mortgage her real estate, unless her husband joined in the contract. Her husband joined with her in the writing, and while the primary purpose of the instrument was to convey to Golden the land he had bought, its terms show that it was also intended to confirm the previous deed Mrs. Jones had made to Bays, which was invalid because her husband had not joined in it; for if this was not intended, the words which we have quoted from the first paragraph of the deed, might have been omitted, as the remainder of the deed contains all that was necessary as to the Golden land, and it is a cardinal rule of construction to give some force if possible to every stipulation of a contract. The deed which Mrs. Jones executed in 1889 conveyed all her interest in her father's estate, including the land which fell to Bays and that which fell to H. H. Rhodes in the division between them. While Mrs. Jones might have confirmed the deed as to part of the land and

not as to the remainder, she did not do this but by apt language confirmed it as a whole. The writing executed in 1902 by her and husband declares on its face that it is executed to confirm the deed made in 1889. The confirmation is not confined to the H. H. Rhodes or Golden land. The same reasons and the same consideration supported the confirmation of the deed as to one end of the tract as to the other. The writing must be construed according to the fair and natural meaning of its language. We, therefore, conclude that the writing cured the defect existing in the former deed, and if it be regarded as a covenant, bars her or her children claiming under her, of a recovery of any interest in the land.

Judgment reversed and cause remanded for a judgment as above indicated.