The order appealed from should, therefore, be reversed and the prisoner remanded.

All concur.

Order reversed and prisoner remanded.

---

HYMAN GREENSPAN and Others, Respondents, v. FRANK YAPLE and ELLEN YAPLE, Appellants.

Third Department, May 24, 1922.

Trespass — action to restrain defendants from using water of pond for bathing and boating — deed to predecessor in title to parties construed not to convey land under pond as to one parcel — plaintiffs prior to commencement of action acquired all lands surrounding pond which predecessor in title owned including rights in pond — land deeded to defendant bounded by high-water mark as it existed at date of deed — no evidence that high-water mark was higher than at time of original deed.

In an action to restrain the defendants from using the water of a pond for bathing and boating on the ground that in doing so they were committing a trespass on plaintiff's property, it appeared that a predecessor in title of the parties owned the pond and land surrounding it; that he conveyed the entire property

which was located in lots 16 and 21 of subdivision 4 of the Hardenburgh Patent in Sullivan county by deed in which the land in lot 16 was described as "containing One hundred and fifty-five acres of land, including nearly the whole of Sheldrake pond, which pond is not hereby conveyed and sold, but reserved for the use and benefit of all the lots and farms contiguous thereto;" but as to the land in lot 21 no reference was made to that part of the land under water in the pond; that the defendants' deed described their land as being bounded by high-water mark of the pond, and that prior to the commencement of the action the plaintiffs acquired all the land surrounding the pond which the predecessor in title of the parties then owned and including whatever rights the grantor had in and to the pond.

*Held,* that as to so much of the pond as was within lot 16 it was not conveyed by the original owner, but is still owned by his heirs or devisees.

If the expression in the original deed, "but reserved for the use and benefit of all the lots and farms contiguous thereto," had the effect of giving to the grantee in that deed the privilege of using the pond that privilege would not be exclusive, and could not be the foundation of the claim made in this action.

The property owned by the defendants which was bounded by high-water mark of the pond is limited by the high-water mark at the time when the deeds were given, and does not extend beyond.

The finding of the court that the high-water mark existing at the time the defendants' deed was made was higher than at the time of the original conveyance so that there was a strip of land between the two marks, which the plaintiffs claim that they acquired by the deed which they secured before the commencement of the action, is not supported by the evidence, and the plaintiffs who have no right to the exclusive use of the pond must establish by satisfactory proof that such a strip exists before they will be given relief for a technical violation of their property rights.

However, if the defendants' land is a part of lot 21 as to which the land under water was originally conveyed they cannot go upon the pond from their land without trespassing upon the lands of the plaintiffs.

APPEAL by the defendants, Frank Yaple and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Sullivan on the 8th day of July, 1921, upon the decision of the court rendered after a trial before the court without a jury at the Sullivan Trial Term, restraining the defendants from entering upon certain lands described in said judgment.

*John D. Lyons* and *Nellie Childs Smith,* for the appellants.

*Ellsworth Baker,* for the respondents.

VAN KIRK, J.:

The plaintiffs allege that they are the owners of Sheldrake pond and entitled to its absolute control and possession; that the defendants occupy the John Hannon property, which lies upon the easterly side of the pond, the boundary line of which at the pond is high-water mark; that defendants are using, in violation of plaintiffs' rights, the waters of the pond for bathing and boating; and ask that the defendants be restrained from so using the pond. The

plaintiffs (as well as the defendants) are the grantees by mesne conveyances of Henry Cruger, who in 1814 conveyed to Henry D. Schoonmaker all the lands surrounding Sheldrake pond. The plaintiffs have no other or greater rights than were conveyed to Schoonmaker. In describing the lands in that deed Cruger used two descriptions. In the first description is the following: " All that certain piece or parcel of land situate, lying and being in the town of Thompsonville, County of Sullivan and State of New York, known as Lot No. 16 in Subdivision No. 4 of the Hardenburgh Patent, containing One hundred and fifty-five acres of land, including nearly the whole of Sheldrake pond, which pond is not hereby conveyed and sold, but reserved for the use and benefit of all the lots and farms contiguous thereto." The word " reserved," used here, has not the ordinary meaning of the word " reserved " in deeds. A reservation is something taken back out of that which is granted, while an exception is of some part of the estate not granted at all. A reservation is never of any part of the estate itself, but of something issuing out of it; some easement or right to be exercised in relation to the estate, as a right to use or occupy, or to take away timber therefrom. (*Craig* v. *Wells,* 11 N. Y. 315; *Blackman* v. *Striker,* 142 id. 555, 561; 18 C. J. 340, § 339.) By the above expression, quoted from the deed, the grantor did not reserve something from that which he granted; he did not grant or sell the pond. In connection with his statement that the pond is not conveyed or sold, he uses an expression declaring his intention to dedicate the pond to the use of, or to consent to its use by, the owners of property contiguous thereto. When there is no ambiguity in the words used the court does not avail itself of rules of construction, or of implied intent to determine the effect of the grant. (*People ex rel. Burnham* v. *Jones,* 112 N. Y. 597, 604.) If there could be any doubt as to the meaning of this part of the deed, the last clause at the end of the second description, which conveys the lands adjoining the pond in lot No. 21 in subdivision No. 4, dispels it. The expression is: " The whole amount of property hereby bargained, conveyed and sold being one hundred acres in Lot No. 16 and fifty acres of Lot 21." In the first description there was included in the boundary· lines one hundred and fifty-five acres, and Sheldrake pond covered about fifty-five acres. In the second description the outlines of the land included fifty acres, within which were six acres under Sheldrake pond. So that this last expression declares that the property conveyed and sold is the amount of land included in the first description, less the acreage under the pond, and in the second description

37

includes six acres of the pond. That portion of the pond within lot No. 16 was not conveyed by Cruger. Cruger never conveyed this land under the pond in lot No. 16, nor have his heirs at law or devisees so conveyed; those heirs or devisees now own it. If the expression in the deed " but reserved for the use and benefit of all the lots and farms contiguous thereto " had the effect of giving to Schoonmaker the privilege of using the pond, that privilege would not be exclusive and could not be the foundation of the claim made in this action. The grantor had a perfect right to sell the lands around the pond and not sell the pond. The owner of land need not voluntarily grant to a purchaser more than he wishes to grant. A right of way over the pond is not a necessity to the contiguous land and it was a matter of his own choice whether or not he should reserve over contiguous lands an approach to the pond for himself or others.

The defendants, their lessors, or the predecessors of the lessors, have never acquired by adverse possession, or because the owner of the pond has slept upon his rights, any right to the use and occupation of the pond. (*Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153.)

The Hannon property, now occupied by defendants, lies on the easterly side of the pond. It is bounded by high-water mark of the pond as of the time when the deeds were given and does not extend beyond such high-water mark. (*People ex rel. Burnham* v. *Jones, supra; Halsey* v. *McCormick*, 13 N. Y. 296, 298.)

The trial court held that plaintiffs might have an injunction because, after the Cruger deed and before the deeds of the Hannon property in 1877, the pond had been raised by a dam constructed in the outlet; that the descriptions in the deeds to the Hannon property show that the property conveyed was bounded by high-water mark of the pond as raised by this later dam; that, therefore, there was a strip of land or collar about this pond, between high-water mark in 1914 and high-water mark as fixed by the later dam, which belonged to these plaintiffs, having been conveyed in the Cruger deed and not having been conveyed in the deeds to the Hannon property in 1877; that over this strip of land the defendants cannot pass without committing a trespass; that the plaintiffs had no adequate remedy at law for such trespass and were, therefore, entitled to the restraining order. The court does not attempt to fix the width of this strip; but, because it finds there was a strip, either narrower or wider, lying at some point between here and there, the defendants could not pass from here to there. The boundaries of this strip are nowhere fixed and could not be marked. I do not find any evidence in the case

justifying the finding of fact that such a strip exists. There was of course no witness who knew the condition of this pond in 1814; no one who knew when the first dam in the outlet was built and whether or not the present dam is higher or lower than the old dam and whether or not it holds the water at a higher level than it stood when at its normal height in 1814; or whether there was a dam in 1877, when this Hannon land was deeded. There was some testimony that there had been mills upon this outlet for many years; that there were the remains of an old dam. Although those remains apparently show a dam lower than the present dam, there is no evidence upon which the court can say this is the fact, or that the old dam still held water in 1877 or when the present dam was built. It is a matter of common knowledge that, with the clearing of lands and draining of swamps, fresh water streams and ponds of the State have perceptibly lessened in size and their water line, except in freshet periods, has perceptibly lowered.

The grounds upon which the plaintiffs have rested are most technical. The plaintiffs have no right to the exclusive use of Sheldrake pond. They cannot point out to any person when he goes upon and when he leaves the alleged strip of land around the present edge of the pond. They are in no sense injured, except in their technical rights, when a person passes over this elusive strip, if there be one. In order to justify the relief that has been granted here, there should be satisfactory proof that such a strip exists.

We disapprove of the finding that there is a strip of land around the lake between high-water mark in 1814 and high-water mark in 1877 belonging to plaintiffs.

But it does not appear in the record whether the Hannon property fronts on the six acres in lot No. 21 or is in lot No. 16. If it fronts on the six acres the defendants could not get upon the pond from their lands without trespassing upon these lands of plaintiffs. If, however, it lies in lot No. 16 the defendants may pass freely from their land upon the pond. The location of the Hannon property should be shown.

The judgment should be reversed and a new trial granted, with costs to appellants to abide the event.

All concur, KILEY, J., in the result.

Judgment reversed on the law and facts, and new trial granted, with costs to the appellants to abide the event. The court disapproves of the findings of fact numbered fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth.