Mace COMBS et al., Appellants,

v.

Evans HOUNSHELL et al., Appellees.

Court of Appeals of Kentucky.

June 23, 1961.

Henry L. Spencer, O. J. Cockrell, Jackson, Earl B. Rose, Beattyville, for appellants.

Kash C. Williams, Moss Noble, Jackson, Edward Jackson, Beattyville, J. K. Wells, Paintsville, for appellees.

PALMORE, Judge.

In 1929 Alfred Hollon and wife, Malvery Hollon, purchased from Sarah and Letcher Gabbard a 120-acre tract of land in Breathitt County, Kentucky. The deed contained the following provision: "Alfred Hollon and wife; Malvery Hollon is to hold said land their life time and then it is to go to Walker Hollon and Woodrow Hollon and Morton Hollon." In 1935 Alfred and Malvery Hollon conveyed a 16-acre portion of the same tract, purportedly in fee simple, to the appellee Evans Hounshell. In 1958 Hounshell and wife executed an oil and gas lease on this 16 acres, resulting in a producing oil well and this lawsuit, in which the successors in interest of Walker, Woodrow and Morton Hollon claim, as against the Hounshells and their lessees, a remainder interest under the 1929 deed from the Gabbards.

Though both estoppel and adverse possession were pleaded in defense, it is doubtful that either was sustained by the evidence. However, the trial court made no findings in that respect and adjudged simply that the 1929 deed from the Gabbards vested the fee in Alfred and Malvery Hollon and passed no title to Walker, Woodrow and Morton Hollon. Hence this appeal.

Except for the description, the deed in question reads as follows:

"This Deed Of Conveyance, made and entered into this 30 day of January, 1929, between Sarah Gabbard and Letcher Gabbard, her husband, parties of the first part and Alfred Hollon and wife, Malvery Hollon, party of the second part,

"Witnesseth: That said party of the first part, for and in consideration of the sum of $500.00, Five Hundred Dollars, in hand paid by Alfred Hollon

and wife Malvery Hollon, the receipt of which is hereby acknowledged, do hereby sell and convey to the part of the second part, her heirs and assigns, the following described property, to-wit:

"(Description)

"Alfred Hollon and wife; Malvery Hollon is to hold said land their life time and then it is to go to Walker Hollon and Woodrow Hollon and Morton Hollon.

"To Have And To Hold the same, together with all the appurtenances thereunto belonging unto the party of the second party, heirs and assigns forever. And the said party of the first part hereby covenants with the said party of the second part, that will warrant the title to the property hereby conveyed unto the party of the second part and their heirs and assigns forever.

"In Testimony Whereof, the party of the first part has hereunto subscribed names, the day and year aforesaid, 30 January, 1929.

"Sarah Gabbard,
"Letcher Gabbard."

The basis for the trial court's judgment, and the theory on which the appellees rest their brief, is that rights cannot be vested in a stranger to a deed by exception or reservation. Flynn v. Fike, 1942, 291 Ky. 316, 164 S.W.2d 470; Sword v. Sword, Ky.1952, 252 S.W.2d 869; Washum v. Konrad, Ky. 1955, 275 S.W.2d 427; White v. Hogge, Ky. 1956, 291 S.W.2d 22. Also cited in support of this proposition is Howard v. Gross, 1941, 287 Ky. 415, 153 S.W.2d 989, but a review of that opinion discloses that the decision was based on the intent of the parties, as gathered from ambiguous language, and not on the theory that the alleged remaindermen were not mentioned in the granting or habendum clauses of the deed.

■ It is a fundamental rule of long standing in this jurisdiction that a deed is to be construed to effect the intention of the parties as it can be gathered from the language as a whole. Riley v. Riley, Ky. 1954, 266 S.W.2d 109. "If clauses are repugnant to each other they must be reconciled if possible; and the intent, and not the words is the principal thing to be regarded. * * * The technical rules of construction are not to be resorted to when the meaning of the party is plain and obvious." Henderson v. Mack, 1884, 82 Ky. 379, 381, 6 Ky.Law Rep. 313.

■ The old rule that the estate conveyed by the granting clause could not be diminished by a later provision in the deed is no longer followed. Brown v. Harlow, 1947, 305 Ky. 285, 203 S.W.2d 60. Nor, indeed, is it necessary even that a deed contain words of conveyance if other words of equivalent meaning are used, East Jellico Coal Co. v. Jones, 1910, 141 Ky. 306, 132 S.W. 411; or that a grantee be named in the caption if he be specifically designated in the body of the instrument, Johnson v. Republic Steel Corp., 6 Cir., 1958, 262 F.2d 108.

■■ It is certain that a remainder interest may be created in the habendum clause alone, without any words of conveyance running directly from grantor to remainderman and without the remainderman's being otherwise designated or constituted a "party" to the deed. See, for example, Baskett v. Sellers, 1892, 93 Ky. 2, 19 S.W. 9, 10, 13 Ky.Law Rep. 909, and Hall v. Wright, 1910, 137 Ky. 39, 138 Ky. 71, 127 S.W. 516; in each of which the three words, "and their children," appearing nowhere except in the habendum, were construed to limit the named grantees to a life estate and to vest in their children the fee simple title in remainder. Consonant with the principle followed in these cases, the earlier case of Henderson v. Mack, 1884, 82 Ky. 379, 6 Ky.Law Rep. 313, in which the granting clause conveyed to

Young, his heirs and assigns, and the habendum said, "To have and to hold * * * to the second party, his heirs and assigns, forever, with covenant of general warranty during his natural life, and after his death to go to and belong absolutely to Belle Mack," etc., held that Young took a life estate and Belle Mack the remainder in fee. Apropos of the case before us now, the opinion commented that the expressions, "heirs and assigns," and "heirs and assigns, forever," in the granting and habendum clauses were words of common form and evidently had been used merely as such. By contrast, in that case as in this, the language creating the remainder was clearly tailored to the individual situation, thereby giving it greater weight in ascertaining the intention of the parties.

Pursuing this question of just how a remainder interest may be created, in the case of Atkins v. Baker, 1902, 112 Ky. 877, 66 S.W. 1023, 23 Ky.Law Rep. 2224, we find a deed cast in form strikingly similar to the one before us here. Following the caption, in which the grantee was identified as "Lucy Atkins, wife of L. E. Atkins," and the recitation of consideration, it continued thus:

"The parties of the first part have sold, and do hereby convey, unto the party of the second part, the following tract of land (describing it); to have and to hold unto said Lucy Atkins forever, with covenant of general warranty. In testimony whereof, witness our signatures this 22d day of July, 1892. This conveyance, at the request of said Lucy Atkins, is made to her for and during her life, and at her death to go to her husband, L. E. Atkins, should he survive her; and, in the event said Lucy Atkins should leave a child or children, then this land shall descend to them and their father according to the laws of descent."

Just as in Henderson v. Mack, supra, and as in this case, the clause in controversy provided that the grantee should hold for life, after which the property was "to go to" a person or persons not party to the instrument, and it was held sufficient to limit a life estate with remainder over.

As we see it there is no perceptible distinction between the Henderson and Atkins cases and this one. Again, as did the court in those cases, we find in the language of the instrument before us a perfectly clear and unambiguous indication of exactly what the parties wished to do, overriding any different construction that might otherwise be given to the more formal expressions in the granting and habendum clauses if they were viewed apart from the clause in which the remainder interest was created.

Howard v. Gross, 1941, 287 Ky. 415, 153 S.W.2d 989, 990, cited by appellees, is distinguishable. There, after ostensibly conveying the fee to James K. Howard and wife, Anna, in common, the deed further provided as follows: "Be it fully understood that James K. Howard is to have full possession and control of said land during his natural life and after his death the title is vested in his heirs." A literal construction of this provision would have meant, of course, that the wife, Anna, took nothing whatever under the deed, though she had been included in both the granting and habendum clauses. Such a result, said the court, surely was not intended; and the matter was resolved by construing the husband's life estate to cover the wife's half interest and the expression, "after his death the title is vested in his heirs," to be words of limitation referring to the half interest conveyed to the husband in fee. Whether this particular disposition ought to serve as a model of construction we are not bound to say, but this much is certain: the avenue of escape taken by the court in that case, through treating the mention of "heirs" as words of limitation rather than purchase, is not available in this case, in which instead of "heirs" we have names of individuals. These, of course, if not words of purchase are nothing. Moreover, if the Howard case *were* applicable here, it would be of

little avail to the appellees, because the interest taken by the grantees would still be whittled to a life estate though the remainder were not recognized.

Should we end this opinion here, having recited authorities we consider ample and adequate to support it, the argument of appellees, invoking the principle against "reservations" to third parties, would go unanswered. So we proceed to it.

The ancient function of a reservation was to create in favor of the grantor "some new thing * * * out of what he had before granted, as 'rendering therefore yearly the sum of ten shillings, or a pepper corn, or two days' plowing, or the like.' " Blackstone, Book II, Ch. XX, p. 299; Sheppard's Touchstone, Vol. 1, p. 80. " 'A reservation is never of any part of the estate itself, but of something issuing out of it; some easement or right to be exercised in relation to the estate, as a right to use or occupy, or to take away timber therefrom.' " Thompson on Real Property, Vol. 6, § 3458, pp. 686–687, quoting Greenspan v. Yaple, 1922, 201 App.Div. 575, 194 N.Y.S. 658.

Rights, therefore, that were the proper subject of reservation were different in nature from an estate in the land as a whole. Thompson on Real Property, Vol. 6, § 3458, pp. 686–687; Cox v. Colossal Cavern Co., 1925, 210 Ky. 612, 276 S.W. 540. Hence, for example, the "reservation" of a life estate is not truly a reservation but is an exception, an exclusion from the operation of the instrument. Thompson on Real Property, Vol. 6, § 3458, p. 687.

From its nature alone it is obvious that an exception could not operate in favor of a third party, and since an estate in the land is not traditionally subject to reservation it would follow that a remainder interest could not be "reserved" and is not affected by the principle barring reservations in favor of third parties. So it is that in this case the remainder inter-est passed to Walker, Woodrow and Morton Hollon not by reservation, but by direct conveyance.

But all of this is highly technical. Why is it that such an important and substantial title as a remainder in fee can be vested so easily in a third party while a lesser and often insignificant interest cannot? It is a fair question.

The rule that a reservation cannot operate to vest rights in a stranger to the instrument is of feudal origin. A reservation was created not by words of grant, but by stipulation in the reddendum clause following the habendum and tenendum clause or clauses of the instrument. Herein seems to lie the genesis of the rule, in that "words of exception or reservation are not *words of grant* and are ineffective to convey a right or interest to a stranger to the deed." Cf. III American Law of Real Property § 12.48, p. 295. (Emphasis added.) That this is indeed the rationale of the rule finds confirmation in such cases as Babb v. Dowdy, 1929, 229 Ky. 767, 17 S.W.2d 1014; and Johnson v. Republic Steel Corp., 6 Cir., 1958, 262 F.2d 108; in which the creation of mineral interests in third parties was upheld simply because the word "conveyed" was employed. When this rusty principle is weighed against the rule that a deed must be construed so as to effect the plain purpose therein stated, without resort to the artful rules of conveyancing, it cannot be justified.

"Such a holding has little or no logical justification behind it. It is a common thing for a grantor to grant different interests to two or more persons by one and the same conveyance. These interests may all be corporeal, as in the case of the grant of a co-tenancy to two or more; or one may be corporeal and the other incorporeal, as where successive interests are granted, one being a present estate and the other a remainder. There seems no justification for any different holding as to the possibility of conveying

land to one grantee subject to an easement which is created by the same conveyance in favor of a second grantee." II American Law of Real Property § 8.29, p. 254.

The persuasive force of this criticism is reflected in the rule adopted in the Restatement of the Law of Property, Vol. 5, § 472, p. 2967:

"It is possible in a single instrument of conveyance to convey corporeal interests to one while conveying incorporeal interests to another. Thus, conveyances may be made of a life estate to one and of a remainder in fee to another. Likewise, it is possible to convey an estate in fee to one conveyee and at the same time and by the same instrument of conveyance convey an easement in the same land to another conveyee. This result is not prevented by the fact that the conveyance of the easement is, in terms, a reservation to the person to whom it is conveyed."

So in conclusion we must concede that the distinction between a "conveyance" to a third party and a "reservation" in his favor is tenuous and artificial and has long outlived the reason for its existence in the first place. Yet it does exist, and what we have in this case is a conveyance, not a reservation. In a future case involving what is intended to be a conveyance over of some interest such as an easement, or even a life estate, but is inartfully couched in terms of reservation or exception in favor of the third party, it may be proper that we consider abolition of the distinction, but since this case does not fall on the dubious side of it that question is not directly presented.

Judgment reversed with directions that a new judgment be entered in conformity with this opinion.