**WHITE LOG JELLICO COAL COMPANY, INC.,**
Appellant,

v.

**Paula ZIPP; Alan Zipp; and Gatliff Coal Company, Appellees.**

No. 1999–CA–00895–MR.

Court of Appeals of Kentucky.

July 7, 2000.

Discretionary Review Denied by Supreme Court Dec. 13, 2000.

William D. Stark, Jr., Barbourville, for Appellant.

Charles J. Baird, Pikeville, KY, W. Patrick Hauser, Barbourville, for Appellees.

Before GUDGEL, Chief Judge; COMBS and MILLER, Judges.

## OPINION

COMBS, Judge:

White Log Jellico Coal Company (White Log) appeals the judgment of the Knox Circuit Court declaring Paula and Alan Zipp (the Zipps) [1] and Gatliff Coal Company (Gatliff) as each owning an undivided one-half (½) interest in the minerals underlying a 351.75–acre parcel of property in Knox County, Kentucky (the Property). After reviewing the record and briefs of counsel, we affirm.

The Zipps and Gatliff claim ownership of the entire mineral estate underlying the Property. White Log claims ownership of both the mineral and surface estates of the same property. There is no dispute regarding the chain of title as the parties had stipulated that each had common sources of title. The controversy involved interpretation of a deed of August 28, 1958, which purported to sever the surface estate from the mineral estate. At issue is White Log's claim to mineral rights; its ownership of the surface is not contested.

On February 13, 1996, the Zipps and Gatliff filed an action seeking a declaration

---

1. The court's order named only Paula Zipp as owner of the undivided one-half (½) interest.

of the respective ownership interests in the Property. On August 21, 1997, the matter was submitted on the record. By order of February 19, 1999, the court entered its judgment in favor of the Zipps and Gatliff. This appeal followed.

On appeal, White Log alleges four errors: (1) that the trial court erred in concluding that the 1958 deed was clear and unambiguous; (2) that the trial court erroneously found that White Log as surface owner was not entitled to claim the mineral estate by adverse possession despite the alleged extensive mining activities that it had permitted; (3) that White Log had established a claim in adverse possession because of the failure of one grantor to sign the 1958 deed, rendering White Log a joint tenant owning ¼ interest—and that the trial court erred in failing to recognize White Log's joint tenancy; and (4) that the conveyances of the mineral rights are void pursuant to KRS 372.070(1).

The standard guiding our review is that the trial court's finding of facts shall not be set aside unless clearly erroneous. CR 52.01. *Croley v. Alsip*, Ky., 602 S.W.2d 418, 419 (1980). In determining that White Log's deed unambiguously excluded mineral rights, the court relied on the following provision from the deed:

> Excluding herefrom all minerals, except the Dean seam of coal, and the usual rights incidental to the extraction and removal thereof from the premises.[2]

White Log alleges that the deed was ambiguous because the reference to the "Dean seam of coal" was handwritten in the 1958 deed. The deed was not actually recorded until 1961 when the clerk re-typed the deed for copying purposes and recorded the newly typed version. The handwritten "Dean seam of coal" was transposed in the re-typed version as merely "Dean seam." White Log relies on this discrepancy as a basis for its argument that the deed was ambiguous and

that the intentions of the parties were accordingly equivocal.

 It is well established in the law that the intentions of the parties to a conveyance must be construed from the four corners of the instrument. Parol evidence is inadmissible unless the language of the document is ambiguous, thereby leaving the parties' intentions susceptible of more than one interpretation. *Kentucky–West Virginia Gas Co. v. Browning*, Ky., 521 S.W.2d 516, 517 (1975). We do not agree that an ambiguity exists. Regardless of the discrepancy resulting from the re-typing, which is minimal when viewed in context, the meaning of the instrument is clear: that *all* mineral rights involving extraction and removal from the property were excluded from the transfer except for the Dean seam, which had already been mined. The court did not err in concluding that the deposition testimony of White Log's witnesses had no impact on the plain meaning of the written deed.

 White Log raises an argument in the alternative on appeal, contending that even if the deed were held to sever the mineral estate, it can nonetheless claim title to the mineral rights by adverse possession. To support this contention, White Log presented evidence that it had permitted extensive mining activity and had engaged in reclamation over the statutory period. We believe that the trial court ably summarized White Log's evidence at Finding # 10:

> Regarding its possession of the minerals underlying the Property and the surface overlying such mineral, the evidence most favorable to White Log is as follows: (i) White Log put up a gate to the entrance to the surface several years ago in order to prevent people from dumping trash, which is consistent with its surface ownership which is not in dispute in this action. (ii) Detherage

**2.** Apparently, the Dean seam had been severed previously and was not at issue as to any of the parties.

claims that he prospected for coal somewhere on the Property in November, 1970 and January, 1971.(iii) White Log claims that *it first permitted part of the minerals underlying the Property in 1974*, although the Record is not clear if this permit encompassed the Property. For the purpose hereof it will be assumed that some or all of the Property was within the permitted boundary. (iv) Coal was leased to McNeil Coal Company which apparently mined some coal in the Jellico seam from 1974 through 1977 and then quit when the same became exhausted. It is not clear whether the mining was actually done on the Property in question, but for the purpose hereof it shall be assumed that some or all of such mining was performed on the Property. (v) White Log submitted the Affidavit of Larry Taylor that the Jellico seam was mined from 1979 to 1981 under a permit issued to Blue Gem Resources. Again the record is not clear regarding whether some or all of the Property in question was included in the permit issued to Blue Gem Resources, or whether the mining actually took place thereon, but for the purposes herein it shall be assumed that some or all of such mining was conducted on the Property. (vi) *White Log published notices of intention to mine* in the local newspaper, however these notices *did not specifically identify the property*. (vii) White Log submitted Unmined Mineral Tax Bills, however Mr. Detherage, the owner of White Log, *could not testify with certainty* that the tax bills included coal on the Property. (viii) White Log submitted a lease to Heidrick Fuels, Inc., however there was never any mining under that Lease, and it is not clear whether that Lease covered the Property. (ix) White Log submitted evidence of payments from S.M. Simon for *wheelage* for hauling coal over the surface, *which is consistent with surface ownership*. (x) White Log submitted evidence that Nally and Hamilton strip mined on the Dean seam in 1989 and 1990, however

the Dean seam was severed in 1922 and none of the parties to this law suit are claiming title to the Dean seam. (Emphasis added.)

Kentucky law has consistently held "that the surface owner holds a severed mineral estate, acquired from a common grantor, *in trust for the benefit of the mineral estate owner*." *Great Western Land Management, Inc. v. Slusher*, Ky., 939 S.W.2d 865, 867 (1996). (Emphasis added.) KRS 381.430. In order to repudiate or avoid the role of trustee and thus to claim the mineral rights by adverse possession, a claimant must demonstrate the same elements underlying adverse possession of land. That is, "there must be exclusive, actual, peaceable, open and notorious, continuous and hostile possession *of the minerals* under a claim of right for the statutory period." *Diederich v. Ware*, Ky., 288 S.W.2d 643, 646 (1956). (Emphasis added.)

We agree with the trial court that White Log failed as a matter of law to establish a claim to the mineral rights by adverse possession. There was no behavior sufficiently hostile or notorious so as to put the mineral owners on notice that White Log was effectively repudiating its trust:

> We have held may [sic] times that in order for the surface owner to obtain title by adverse possession to the minerals which constitute a severed estate, he must have openly disavowed or repudiated the trust declared by the statute and have exercised dominion over the mineral estate and brought notice thereof to the owner of that estate.

*Ward v. Woods*, Ky., 310 S.W.2d 63, 65 (1958). When viewed most favorably to White Log, the evidence demonstrates that the only possible period during which any mining activity took place was in the Jellico seam from 1974 to 1976 and then again from 1979 to 1980. The statutory period for adverse possession is fifteen (15) years. KRS 413.010. Thus, White Log did not obtain legal title to the mineral estate

through adverse possession—having fallen far short of the requisite number of years.

■ In its third argument, White Log also seeks to establish a claim to title by adverse possession based on the failure of George T. Faulkner (one of the four grantors of the Property) to sign the August 1958 deed of conveyance. As a result of this omission, White Log asserts that it has adversely possessed an undivided one-quarter (¼) interest in the mineral estate. Again, we disagree.

■ In order to prevail on a claim of adverse possession against a joint tenant, it is necessary for the claimant to demonstrate that an "ouster" as occurred. *Wood v. Wingfield,* Ky., 816 S.W.2d 899, 903 (1991). An "ouster" can only be effectuated by proving the same elements necessary for adverse possession; that is, the "possession must be of such an actual, open, notorious, exclusive and hostile character as amounts to an ouster of the other tenants." *Id.* The case of *Cary–Glendon Coal Co.,* Ky., 303 Ky. 846, 198 S.W.2d 499, 502 (1947), contains a graphic and anecdotal analysis of the degree of notice required to effect an ouster of a joint tenant:

> In discussing the question of adverse possession in a very well prepared brief in another cause before this court, the writer of the brief for the appellees herein most ably set out all the elements of adverse possession. In that brief there appears this very significant expression: "It must have disposition, and that disposition must be mean tempered, like the hind end of a mule, and hostile to the point of expulsion and exclusion." In adverse possession against a co-owner there must be something more than an intention and claim. That intention and claim must be brought to the knowledge and attention of the person against whom it is sought to be exercised, and as stated above, it must be hostile to the point of expulsion and exclusion.

■ White Log last argues that the deeds to the Zipps and Gatliff are champertous and thus void pursuant to KRS 372.070(1), which provides as follows:

> *Any sale or conveyance,* including those made under execution, of any land, or the pretended right or title thereto, *of which any other person has adverse possession* at the time of the sale or conveyance, *is void;* but this section *does not render void any devise of land in adverse possession.* (Emphasis added.)

It is well settled that a party "seeking to establish title must sustain his claim either by record title or adverse possession; he must recover *on the strength of his title* and not upon the weakness of his adversary's title, or the fact that his opponent has no title." *Gabbard v. Lunsford,* 308 Ky. 836, 215 S.W.2d 985, 986 (1948). Since we have agreed that the trial court correctly determined that the elements of adverse possession have not been met, this argument fails perforce on the merits. White Log, having failed to establish its own title, is not entitled to rely on the alleged weakness of the title of the appellees.

The judgment of the Knox Circuit Court is affirmed.

ALL CONCUR.