RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1083-MR


ROBIN RENEE ROBINSON; TOMMY
ROBINSON; BRITTANY NICOLE TACKETT;
AND TOMMY DWAYNE TACKETT                                    APPELLANTS


|  | APPEAL FROM PIKE CIRCUIT COURT |
| v. | HONORABLE EDDY COLEMAN, JUDGE |
|  | ACTION NO. 14-CI-00973 |


TERRY BRYANT AND SHERYL BRYANT                              APPELLEES



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Joint property owners Robin Renee Robinson, Tommy

Robinson, Brittany Nicole Tackett, and Tommy Dwayne Tackett appeal from the

June 24, 2019 judgment of the Pike Circuit Court determining disputed property

boundaries in favor of Terry Bryant and Sheryl Bryant.  Having determined that

the trial court's judgment was supported by substantial evidence and is not otherwise erroneous, we affirm.

The properties at issue in this appeal are neighboring parcels of land all of which lie on the north side of Kentucky Route 1469 in Virgie, Pike County, Kentucky. The appellants asserted joint ownership interests to certain land through inheritance from the estate of Mildred Jewell Tackett Kelly. Tommy Dwayne Tackett also personally owns a separate neighboring tract which he obtained by deed from his mother Mildred Jewell Tackett Kelly and her husband at the time, Dolph Kelly, in 2011. Terry Bryant and Sheryl Bryant purchased three neighboring and contiguous tracts of property in the period of 2000 to 2007, at least one of which was obtained from Sheryl Bryant's father. Within this litigation two areas were in dispute, the first being the westernmost border of the Bryants' property on which two mobile homes and a storage building are located (the "western" area) and the second being the northernmost boundaries of the Bryants' tracts (the "hillside" area).

All the designated properties share one common source in their chain of title, Lackey T. Burke who owned the entirety of the land prior to 1938 and subsequently began selling tracts of his property. Normally a common source would be of great assistance in determining the metes and bounds of each of the parcels later divided from Burke's original land holdings. In this case however, the

specific boundaries of the successive parcels are complicated by their irregular shapes, the absence of previously recorded markers (including trees, that are referenced in the original deeds but no longer exist) and the effects of surface mining which has altered the former topography of the hillside area.

The appellants alleged in their complaint that the Bryants encroached onto their property by placing two mobile homes and a smaller storage building partially over the appellants' property line. For purposes of clarity, the western boundary area in question (where the westerly portions of the two trailers and one storage building lie) is a strip of land approximately 20 feet in width that runs perpendicular to Kentucky Route 1469. The appellants filed their action in 2014 against the Bryants to quiet title in this disputed western area and to cause the Bryants to remove their mobile homes and storage building. The Bryants counterclaimed to quiet title in their own lands, asserting lawful ownership of the disputed areas, a prior agreement amongst prior owners as to the boundaries of the varying tracts and, in the alternative, adverse possession.

A two-day bench trial was conducted and in addition to taking the respective former and current deeds into evidence, the trial court heard testimony from one party and one surveyor for each side. For the appellants, licensed surveyor Joe Dean Anderson testified and submitted a survey and Tommy Tackett

testified regarding his personal beliefs as to the properties' boundaries and his recollections of his deceased father's actions with regard to those boundaries.

For the Bryants, Sheryl Bryant testified that a survey had been performed by licensed surveyor Randall L. Stewart in 1993 when the concerned property was owned by her father. This survey was conducted after the appellants' predecessor in interest, Tommy Tackett's father, voiced concern regarding the placement of the first, northernmost, mobile home in 1992. Subsequent to that survey, a post was placed by the then-owners to mark their property line and that first mobile home was moved approximately 8 feet from the surveyed and agreed upon property line. In 1994 a small storage building was constructed within the confines of Bryants' agreed upon property. Later a second mobile home was placed in conformity with both the agreed-upon boundary line and the placement of the prior mobile home and storage building. Importantly, Stewart himself testified regarding the 1993 survey he had performed and to the placement of the agreed-upon post by the former land owners. One image accepted by the trial court showed that all three structures were in place in the disputed area by March 14, 1995.

Based upon the testimony and evidence presented, the trial court entered its initial findings of fact, conclusions of law, and judgment. The trial court determined that more than fifteen years had passed since the appellants'

claim for trespass had accrued in reliance on Kentucky Revised Statutes (KRS) 413.010 and awarded the disputed western area to the appellees pursuant to Kentucky's doctrine of adverse possession. *See White Log Jellico Coal Co., Inc. v. Zipp*, 32 S.W.3d 92 (Ky.App. 2000) (explaining the requirements for adverse possession in Kentucky). The trial court went on to also rule that "the property lines of the [Bryants] as indicated by the defendants' Exhibit #16 correctly reflects the property lines of the defendants herein." Exhibit #16 was neither appended to the trial court's judgment, nor does the judgment contain a formal legal description of the boundaries of the Bryants' properties. However, all trial exhibits referenced within the judgment are present within the record on appeal and this referenced survey sets forth not only the boundaries of western area but also the respective boundaries of the hillside area.

The appellants thereafter filed a motion to alter, amend, or vacate, stating only that "said Judgment contains a mistake." The alleged mistake was not denominated or otherwise described by the appellants in their motion and they did not file a memorandum or any exhibits in support of their bare motion.

While the trial court did amend its original judgment, careful review of the amended judgment only reveals one change, that being the recitation of Tommy Tackett's testimony regarding his physical location at the time of the meeting between his father, Sheryl Stewart's father, and surveyor Stewart in 1993.

On appeal, the appellants do not question the trial court's determination of adverse possession regarding the western areas on which portions of the three structures lie. What the appellants object to is to the findings of the respective boundaries of the hillside area, that land area which is the most northern portion of the properties furthest from Kentucky Route 1469. Appellants assert that such property should have been awarded to them based upon the "clear weight of the evidence."

The standard guiding our review is that the trial court's findings of fact shall not be set aside unless they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01; *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky. 1980). Factual findings are not considered clearly erroneous if they are "supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky.App. 2005). Furthermore, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Norwich v. Norwich*, 459 S.W.3d 889, 898 (Ky.App. 2015).

In this matter, the trial court determined that the Bryants' trial exhibit #16, a boundary survey performed by Stewart, was the accurate representation of the parties' respective lawful property boundaries. The appellants do not designate with any precision which boundary or portion of land is incorrect within that survey or how such survey does not conform with the legal descriptions found in

prior instruments. Furthermore, neither the appellants' brief nor their reply cites to any portion of the record which contains criticism of the boundaries established by Stewart within his survey. The respective surveys referenced by the appellants may differ, but there is no argument as to why the appellants' proffered survey is correct while the Bryants' is incorrect factually or as a matter of law. While the testimony of Tommy Tackett regarding what he believed the boundaries to be was heard and considered by the trial court, such testimony would not be determinative of the true boundaries of the properties given the existence of the prior deeds, recorded with the Pike County Clerk, all of which contain their own respective legal descriptions.

Property boundaries are expressed in objectively defined and expressed measurements set forth within recorded instruments of title. Where, as here, prior boundaries and their markers have been disturbed, the courts must rely upon experts to survey and define present boundaries within the context of historic title documentation. The trial court, in a very thorough and well-documented opinion, adjudicated the respective property interests of the parties.

The trial court as fact finder heard the evidence and saw the witnesses. When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the trial court. *Gates v. Gates*, 412 S.W.2d 223 (Ky.

1967).  The evidence in the record in this case is clearly sufficient to sustain the judgment of the trial court.

For the foregoing reasons, the judgment of the Pike Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

James P. Pruitt, Jr.
Pikeville, Kentucky

BRIEF FOR APPELLEES:

Donald H. Combs
Pikeville, Kentucky